Russell A. Robinson, 163937
Law Office of Russell A. Robinson, APC
345 Grove Street, First Floor
San Francisco CA 94102
Telephone: 415.255.0462
Facsimile:   415.431.4526

Counsel for Plaintiff
ED SUMMERFIELD

FILED

2009 JUN 12 A 9:21

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

ADR

E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ED SUMMERFIELD, ARTHUR SUMMERFIELD, and RITA SUMMERFIELD

Plaintiffs,

v.

STRATEGIC LENDING CORPORATION, ALI WEICHLER, LEONARDO "LEO" AGUSTIN, ERIC SWENSEN, and DOES 1 - 30,

Defendants.

C 09 02609 HRL

COMPLAINT FOR DAMAGES

DEMAND FOR JURY TRIAL

[Employment]

## I. INTRODUCTION

1.  On information and belief, Defendant STRATEGIC LENDING CORPORATION (SLC), at all times herein relevant, was a corporation formed under the laws of the State of California, principal place of business in Campbell, California, County of Santa Clara; Defendant ALI WEICHLER is a resident of the County of Santa Clara, at all relevant times was the person affiliated with, and/or employed by, SLC who hired, supervised, managed, and induced Plaintiff to act; and, Defendants LEONARDO AGUSTIN (Agustin or "Leo") and ERIC SWENSEN were, on information and belief, affiliated and

1  partnered with Weichler in the operation, ownership, and control of SLC.

2. Plaintiffs ED SUMMERFIELD, ARTHUR SUMMERFIELD, and ARTHUR SUMMERFIELD, are, and at all times relevant were, a California resident.

3. The true names and capacities of Defendants sued herein as DOES 1-30 ("DOE defendants") are unknown to Plaintiffs, who therefore sues said Defendants by such fictitious names, and Plaintiffs will seek leave to amend this complaint to show their true names and capacities when the same are ascertained. On information and belief, each DOE defendant was an employee/agent of the other defendants, and at all material times acted within the course and scope of that relationship.

4. Plaintiffs are informed and believes each Defendant sued herein was wrongfully or otherwise responsible in some manner for events and happenings as hereinafter described, and proximately caused injuries and damages to Plaintiffs.

5. Plaintiffs are informed and believes, and thereon alleges, that each Defendant was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believes, and thereon alleges, that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter otherwise specifically alleged.

6. At all material times, each Defendant was jointly engaged in tortious activity, resulting in the deprivation of Plaintiffs; rights and other harm.

## II. GENERAL ALLEGATIONS AND JURISDICTION

7. Many of the acts complained of herein occurred in and around the County of Santa Clara, in the State of California.

8. Plaintiffs' federal claims arise under, *inter alia,* 18 USC §1981, et seq., presenting a federal question. The jurisdiction of this Court is predicated on 28 USC §1331. Plaintiffs' related state claims, arising from many of the same, common facts, are properly before the Court under the doctrine and rule of supplemental jurisdiction. State claims were filed earlier by Ed Summerfield as part of the case *Summerfield v. Strategic Lending Corporation, et al.,* venued in the Superior Court of the State of California (No. 1-CV-07-084987), an action filed on April 30, 2007, and dismissed by Ed Summerfield without prejudice on June 12, 2009; thus all statutes of limitations were tolled.

## III. INTRA-DISTRICT ASSIGNMENT

9. This matter has been filed in the Court's San Jose Division, pursuant to Civil L.R. 3-2.

10. Plaintiffs are, and at all times mentioned in this complaint were, citizens of the United States.

11. A substantial part of the events giving rise to this action occurred in Santa Clara County, California, and at least one named defendant (Weichler) resides in Santa Clara County. Venue is therefore proper under 28 USC §1391(b).

12. This complaint may be pled in the alternative pursuant to FRCivP 8(e)(2).

## IV. HISTORY

13. In May 2003, Weichler asked Ed Summerfield to leave his position at Novastar and to join SLC; after several months, in reliance on many

COMPLAINT FOR DAMAGES
[Jury Trial demanded]
*Summerfield, et al., v. Strategic Lending, et al.*      3                                   P020.COMPL[1]

promises and inducements from Weichler, Ed resigned from Novastar. Weichler required Ed to obtain a real estate license. Weichler guaranteed, at first, a million dollars a year. Ed, skeptical of the million dollars per year promise, called Weichler back to verify and Weichler guaranteed at least $60,000 the first year, around $200,000 the second year, and more each year after; by year four, Weichler guaranteed Ed that Ed would be earning a million dollars annually at a minimum and that he would be trained to whatever million-dollar level Ed wanted.

14. In reliance on Weichler's statements, Ed studied for the California Real Estate exam, spending $1,000 altogether in material, classes, books, gas, and other items. Next, Ed went to Palm Springs for training as instructed by Weichler, costing Ed nearly $1,000.

15. At the end of August 2003, Ed asked Weichler when he would be getting paid any money such as hourly wages and the money promised. Weichler said not to worry. Weichler then told Ed to bring all his files. In September 2003, Weichler again promised Ed that Weichler would get Ed to a level of earning between $1 million and $6 million annually, but that it would not be until year four because of the training required. Weichler spoke with extreme confidence and was believable; Ed believed Weichler.

16. Over the course of the relationship, Weichler took Ed on long drives in Ed's car to lenders and personal places such as department stores, classic car dealerships, and other places that were non work-related areas. Ed would pay all transportation costs including meals and snacks because Weichler promised Ed would get the money back through deals and the gathering of new deals.

17. Weichler would also have Ed practice copying other people's signatures, writing them in loan applications, saying this is part of the job,

and that there's nothing wrong with it.

18. Defendant SLC, through Weichler and other management, required Ed to purchase software and other work-related materials; these expenses were never reimbursed. Weichler required Ed to buy expensive and fancy-looking glasses. Weichler instructed Ed to put these expenses on Ed's credit card and Weichler promised that Ed would get paid later.

19. In late 2003, Weichler had a long, drawn-out discussion in his office and basically said that Ed would not be allowed to date girls, nor have any type of relationship with them until he was rich or it will screw up the training. Weichler wanted Ed to go golfing, join a fitness center, etc.

20. In January 2004, Weichler struck Ed over the head and got angry because Ed went on a date; Weichler then forced Ed to dump a girlfriend as a condition of continued employment. Weichler said the training would end immediately if Ed did not do immediately what Weichler demanded. Weichler then showed Ed porn on the computer.

21. In January 2004, Ed joined the expensive fitness club Weichler required Ed to join in order to build a relationship with Weichler's realtor. The membership cost Ed $1,100 to join and $130 per month.

22. Weichler didn't like Ed's clothes, made it very clear that a requirement was to have great clothes, and Weichler required Ed to go to Macy's to get clothes. At other times, Weichler required Ed to purchase additional clothes and thus to spend additional monies.

23. In addition to making Ed spend [un-reimbursed] money on all manner of items, Weichler would belittle or strike Ed once in a while and Ed suffered extreme embarrassment. Ed purchased more clothes from Mervyn's and Macy's at Weichler's demand. Ed had to endure Weichler's daily and hourly rants, which was embarrassing. At other times, Weichler

would get furious if Ed did not copy signatures accurately. Weichler would stress not to show the processors.

24. In April 2004, Weichler required Ed to buy a hidden camera to record himself in the office because he didn't like the way Ed walked. This cost $1,084.54, again un-reimbursed.

25. By August 2004, everyday was becoming more and more unbearable as lots of tiny things on a daily or hourly basis kept coming up and Ed would be falsely blamed. Weichler then demanded that Ed obtain a notary license and Ed did.

26. In October 2004, Ed demanded his $60,000 because Weichler guaranteed that the last year. It had been over a year. Weichler again stated and promised that the deals and money were coming soon. Weichler was then silent and went over to his computer and wrote a TO DO list.

27. In early 2005, Weichler admitted to Ed that Weichler had no real estate license. Weichler continued to say he wanted Ed to sign a paper stating that Ed would not sue SLC or Weichler or others at the company. Ed began suffering additional harassment at work, designed on information and belief to get Ed to quit and to convince Ed not to sue. Ed later learned, in late 2005, that Weichler, Swensen, Agustin, Does 1-30, and each of them, had been engaged in luring homeowners and mortgagees out of stable bank notes and into hidden fees and interest loans, at great profit to Defendants. Additionally, Ed learned that said defendants had falsified loan documents, mis-stated applicant income, and engaged in other fraudulent and/or quasi-criminal activity in order to unlawfully

28. On April 29, 2005, Ed received a termination letter, informing him that he had been terminated from Strategic.

29. While Ed worked for Weichler and the other defendants, met with

Rita and Arthur on many occasions. In the course of these meetings, Weichler convinced Rita and Arthur, with whom Ed lived in Sunnyvale, California, to re-finance their home, to take a line of equity against their home, and to borrow heavily on other property, all to the benefit and unlawful gain of the defendants.

30. Taking advantage of Arthur's diminished capacity and advanced age, Weichler also steered Arthur into day trading and forced Arthur to keep steady losses from Rita and Ed. Rita and Ed did not discover the enormous damage and losses caused by Weichler and his co-defendants until the latter part of 2005 and early 2006, when Arthur was forced to borrow again to make up for losses and margin calls in excess of $400,000.

## V. CAUSES OF ACTION

### (1) First Cause Of Action: Violations of 18 USC §§ 1962, et seq. (As To All Defendants by All Plaintiffs)

31. Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

32. In doing the acts alleged, Defendants Weichler, Swensen, Agustin, Does 1-30, and each of them unlawfully acquired, maintained interest in, controlled an "enterprise" through a pattern of racketeering activity in violation of 18 USC §1962(b). Additionally, Defendants conducted the affairs of the enterprise, SLC, through a pattern of racketeering activity in violation of 18 USC §1962( c).

33. SLC was, at all relevant times, an "enterprise" as defined to include "any partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact. . . " under 18 USC §1961(4)

34. In doing the acts alleged, Defendants engaged in "Racketeering activity" such as mail fraud, wire fraud, and interstate transportation and

sale of fraudulently obtained goods. On information and belief, this pattern of racketeering activity was comprised of more than two acts of racketeering activity within a ten year period.

35. Additionally, said defendants conspired to perform these unlawful acts, in violation of 18 USC §1962(d). They were able to damage Plaintiffs through their unlawful activity by, *inter alia*, taking advantage of Arthur's diminished mental capacity, using and abusing the trust Rita placed in Weichler because of a personal relationship with Weichler's mother, and the false promises Weichler made to Ed.

36. As a direct, legal result of the unlawful activities of Defendants, Plaintiffs were injured and damaged according to proof.

37. Plaintiffs are further entitled to treble damages as someone injured in his business or property by reason of a violation of section 1962. 18 USC §1964(d).

### (2) Second Case Of Action: Negligence
### (As To All Defendants by All Plaintiffs)

38. As a direct and proximate result of Defendants' negligence, as alleged above, Plaintiffs were damaged. Plaintiffs are informed and believe that Defendants engaged in a pattern and practice in this regard with others throughout the years.

39. The full value or extent of the damages sustained by Plaintiffs is not known at the present time. The conduct by Defendants and each of them, as described above was oppressive, fraudulent, and malicious, thereby entitling Plaintiffs to an award of punitive damages in an amount appropriate to punish and make an example of Defendants and each of them.

WHEREFORE, Plaintiffs pray for relief and judgment as set forth below.

///

### (3) Third Cause Of Action: Breach Of Fiduciary Duty
### (As To All Defendants by All Plaintiffs)

40. Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

41. At the time Defendants, and each of them, dealt with Plaintiffs, and continuing through the present, each maintained a special, or fiduciary, relationship with Plaintiffs. As fiduciaries, each defendant had a duty to act with loyalty and honesty and in a manner consistent with the best interests of Plaintiffs. Putting their own interests before Plaintiffs', Defendants and each of them caused Plaintiffs to suffer adverse consequences, caused Plaintiffs to spend unnecessary monies, and caused other losses as a result of these breaches.

41. By undermining Plaintiffs' situation through the above-mentioned conduct, by failing properly to disclose material matters, and by doing the acts alleged above and other things, said defendants breached the fiduciary duty each owed to Plaintiffs. It became clear after Ed was terminated by Defendants that Defendants had failed to disclose many material facts – such as the fact that Weichler was a not a licensed realtor, that Ed would not be paid, that Ed would never be properly trained, and that Defendants never intended to pay Ed the kind of money they promised him – in efforts to put Defendants' pecuniary interests before the interests of their employee, Ed herein. As a direct, legal result of these breaches, Ed was damaged in an amount according to proof at trial. So, too, all Plaintiffs were damaged by the false and unlawful loan packages Defendants into which forced Plaintiffs.

WHEREFORE, Plaintiffs pray for relief and judgment as set forth below.

///

### 4. Fourth Cause Of Action: Breach Of Contract
### (As To All Defendants by Plaintiff Ed Summerfield, Only)

42. Plaintiff Ed Summerfield re-alleges and incorporates by reference all preceding paragraphs.

43. Ed and Defendants were parties to a contract, or series of agreements. The terms of the partly written, partly oral, and partly implied contract(s) upon which Plaintiff relied included, but were not limited to, the following: Defendants would pay Plaintiff for his work, reimburse Plaintiff for his expenses, and would train Plaintiff so that Plaintiff would earn an annual salary of over $1 million after four (4) years.

44. Defendants, and each of them, did not perform as promised despite Plaintiff's complete performance and reliance on Defendants' promises. As a direct result, Plaintiff was damaged in an amount according to proof at trial.

45. Defendants, and each of them, did not use their best skill and due diligence in training Plaintiff. An implied term of the agreement required the defendants to use their best skill and due diligence in assisting and in training Plaintiff; Defendants breached this part of the agreement. 30. Defendants, and each of them, breached the contract with Plaintiff by committing the acts alleged above.

46. As a direct, legal, and proximate result of the breaches by Defendants, and each of them, Plaintiff suffered and will continue to suffer substantial financial losses and damage caused by the conduct of Defendants and each of them.

WHEREFORE, Plaintiff prays for relief and judgment as set forth below.

///

## 5. Fifth Cause Of Action: Breach Of The Implied Covenant Of Good Faith And Fair Dealing

### (As To All Defendants by All Plaintiffs)

47. Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

48. As a result of the relationship between Plaintiffs and Defendants, the expressed and implied promises made in connection therewith, and the acts, conduct, and communications resulting in these implied promises, said Defendants promised to act in good faith toward and deal fairly with Plaintiffs requiring, *inter alia*, the following:

   a. Each party in the relationship act with good faith toward the other concerning all matters arising from the relationship;

   b. Each party in the relationship act with fairness toward the other concerning all matters arising from the relationship;

   c. No party take any action to unfairly prevent any other party to the relationship from obtaining the benefits of the relationship;

   d. Defendants, and each of them, would comply with their own promises, representations, and developed customs in deWeichlerng with Plaintiff;

   e. Defendants, and each of them, would not misappropriate or subvert Plaintiff's expectations in the agreement; and,

   f. Defendants, and each of them, would give Plaintiff's interests as much consideration as they gave their own.

49. The conduct by Defendants, and each of them, was wrongful, in bad faith, and was a violation of said Defendants' legal duties. Plaintiffs further allege that said Defendants breached the covenant of good faith and fair dealing when they acted as alleged above.

50. The breaches of the covenant of good faith and fair dealing by Defendants, and each of them, were a substantial factor in causing damage to Plaintiffs. As a direct, legal, and proximate result of said breaches, Plaintiffs lost substantial benefits in an amount to be proven at trial.

WHEREFORE, Plaintiffs pray for relief and judgment as set forth below.

## 6. Sixth Cause Of Action: Unpaid Wages, Un-Reimbursed Expenses, And Related Labor Code Claims
### (As To All Defendants by Plaintiff Ed Summerfield, Only)

51. Plaintiff Ed Summerfield re-alleges and incorporates by reference all preceding paragraphs.

52. During the time Strategic employed Ed, Ed was compelled to work in several capacities, including but not limited to as described above and other services. Defendants never paid Ed for these services, failed to keep track of Plaintiff's hours in violation of Labor Code §1174, did not reimburse expenses, and did not pay Plaintiff overtime or for meal/rest periods in violation of IWC Order 5, §11. Plaintiff is informed and believes that Defendants did these things to Plaintiff as part of an ongoing practice; and, that this unlawful practice continued.

53. Plaintiff is owed wages by Defendants pursuant to Labor Code §§ 200, et seq., and waiting time penalties, pursuant to Labor Code §203.

54. Pursuant to Labor Code §1194, Plaintiff seeks the payment of all unpaid wages and overtime, as well as attorneys' fees, interest, and costs.

55. Pursuant to Labor Code §1194.2(a), because Defendants made payment to Plaintiff of a wage less than the minimum wage fixed by an order of the commission, Plaintiff shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

56. Plaintiff thus claims wages, unpaid wages, penalties, interest, costs,

1 attorneys' fees, and other statutory damages in an amount according to
2 proof.
3    WHEREFORE, Plaintiffs pray for relief as hereinafter alleged.
4    1.   For all damages in an amount according to proof, and for treble
5 damages as allowed under 18 USC §1964(d);
6    2.   For costs of suit, including reasonable attorneys' fees;
7    3.   For pre-judgment interest as allowed under the law;
8    4.   For disgorgement of fees paid and costs expended in needless and
9         wasteful refinances caused by Defendants' acts and errors;
10
11   6.   For punitive damages; and,
12   5.   For such further relief as the Court deems just and proper.

Dated: 11 June 2009

By: _____
Russell A. Robinson
Counsel for Plaintiffs
ED SUMMERFIELD, ARTHUR SUMMERFIELD, and
RITA SUMMERFIELD

## VI. DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiffs hereby demand a trial by jury in this matter. Plaintiffs request that the matter be designated as a jury action upon the Court's docket.

Dated: 11 June 2009

By: _____
Russell A. Robinson
Counsel for Plaintiffs
ED SUMMERFIELD, ARTHUR SUMMERFIELD, and
RITA SUMMERFIELD

1 | **VII.   CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.

Dated: 11 June 2009

By: Russell A. Robinson
Counsel for Plaintiffs
ED SUMMERFIELD, ARTHUR SUMMERFIELD, and RITA SUMMERFIELD