Russell A. Robinson, 163937
Law Office of Russell A. Robinson
345 Grove Street, First Floor
San Francisco CA 94102
TEL:   415.255.0462
FAX:   415.431.4526

Counsel for Plaintiffs
ED SUMMERFIELD, ARTHUR
SUMMERFIELD, and RITA SUMMERFIELD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ED SUMMERFIELD, ARTHUR ) No.   C-09-2609-HRL
SUMMERFIELD, and RITA SUMMERFIELD, )
) **PLAINTIFFS' OPPOSITION TO JOINT**
Plaintiffs, ) **MOTION TO DISMISS**
) [Jury Trial Demanded]
v. )
) Date:        March 30, 2010
STRATEGIC LENDING CORPORATION, ET ) Time:        10:00 a.m.
AL., )
)
Defendants. )
)

**I.    INTRODUCTION**

In 2002, Plaintiff Rita Summerfield friend, Gisela, introduced Rita to Gisela's son, Defendant Weichler. Through this connection, Weichler learned that Rita and her husband, Arthur Summerfield owned a home in Sunnyvale, several condominiums in the South Bay, a beach house in Southern California, and a luxury penthouse in Munich, Germany, with a grand view of the Oktoberfest fair grounds.

Through this social connection, Weichler also learned that most of these properties were owned outright by the Summerfields. Weichler, who exercised control and ownership over Defendant Strategic Lending Corporation[1], saw an opportunity to capitalize on the Summerfields

---

[1]        Exhibit 1 [Statement of Information (September 1, 2004), California Secretary of State].

*Summerfield, et al., v. Strategic, et al.* (No. C-09-2609-HRL)
PLAINTIFFS' OPPOSITION TO JOINT MOTION TO DISMISS

1 and their equity. He thus offered a job to Ed Summerfield, the son of Rita and Arthur.[2]

2 As alleged in the Complaint, Ed Summerfield was hired by Weichler and Strategic. Defendants Eric Swensen and Leonardo Agustin[3], who also owned/controlled Strategic, took part in profits derived from loans generated through Strategic during a time when many unscrupulous and shady mortgage brokers lured unsuspecting property owners into the refinance trap. Defendants used the unsuspecting Ed Summerfield to lure many of these homeowners into this trap. Weichler for example tried to convince Ed to falsify loan documents. Ed, who was a notary, several times had to refuse notarizing forged signatures on loan documents.

Initially, as an inducement to Ed, Weichler promised Ed untold riches and upwards of $1,000,000 annual salary if Ed would come to work at Strategic and learn the business from Weichler. Weichler maintained his hold on Ed for about two years through repeated promises of riches and education in the industry.

Weichler and Strategic never delivered on their promises to Ed.

Instead, Weichler harassed and harangued Ed, Rita, and Arthur to refinance at least one property. Using promises to Ed as bait, Weichler eventually convinced Rita and Arthur to refinance their home through Strategic. At the time of this transaction in 2004, Rita and Arthur were one year from paying off the mortgage on this property. Nonetheless, succumbing to Weichler's promises that the loan was a "superior product" and that he would make Ed rich, Rita and Arthur signed on the proverbial dotted line.

The loan Weichler and Strategic sold the Summerfields was hugely profitable for the defendants. Unfortunately, that loan was a terrible deal for the Summerfields.

Weichler had, by this time, so ingratiated himself into the Summerfield home that he was

---

[2] These facts and others can be added through amendment.

[3] Strategic designated Agustin as agent for service. Strategic's corporate charter is suspended. *See,* Exhibit 2 [Certificate of Status (May 2, 2008), California Secretary of State]
Agustin disappeared. *See, e.g.,* exhibit 3, failed service efforts on Agustin.
Because Weichler and Swensen have refused to divulge the whereabouts of Agustin, Plaintiffs intend to seek an order from this Court allowing Plaintiffs to serve Strategic through the California Secretary of State and to serve Agustin by publication. *See, e.g.,* exhibit 4, e-mail from defense counsel Vince Kilduff (January 13, 2010).

*Summerfield, et al., v. Strategic, et al.* (No. C-09-2609-HRL)
PLAINTIFFS' OPPOSITION TO JOINT MOTION TO DISMISS   - 2 -

secretly meeting with Arthur. Arthur, born January 1, 1931, previously suffered a debilitating injury at work and was, at the time of these dealings with Weichler, undergoing treatment for cancer. Weichler started Arthur day-trading.

In the course of day-trading, Arthur – who at all relevant times acted at direction of Weichler – lost over $500,000  The online brokerage firm exercised its right and made a margin call on Arthur. Having not worked since 1992 because of his injuries, Arthur needed to borrow money. To meet Arthur's needs, Weichler was ready with another predatory loan.

Throughout 2004 and into April 2005, Weichler, exercising control over Strategic, preyed upon the Summerfields. Then, the Summerfields stopped buying Strategic loans. They simply were unable to keep borrowing. Swensen, Agustin, and Weichler, unable to profit any longer from Rita and Arthur – and having not made good on their promises to Ed – terminated Ed in late April 2005.

After Ed was terminated, Weichler continued to re-assure Rita and Arthur, fraudulently, that the loans he and Strategic had sold were good, solid loans. These fraudulent reassurances, via telephone and using the aforementioned personal connection of Weichler's mother, Gisela, kept Plaintiffs ignorant of the true nature of the predatory and fraudulent loan products they had been sold until about August 16, 2005.

Ed, who had never been paid what he was promised and had not received legitimate wages while at Strategic, filed a claim with the California Labor Commissioner, and followed with the state court action mentioned in the moving papers. Ed caused that case to be dismissed, without prejudice, in June 2009. Plaintiffs filed this federal court action the same date upon which that state court action was dismissed.

Defendant Weichler moved for dismissal under Federal Rules of Civil procedure, Rules 12(b)(1) and 12(b)(6). Defendant Swensen joined said motion. Plaintiffs oppose dismissal. The Court should deny the motion. However, should the Court grant all or part of the motion, Plaintiffs pray leave to amend. Any defects may be easily cured through an initial amendment.

/ / /

## II. ARGUMENT

Under FRCP, Rule 8(a), Plaintiffs' must provide "fair notice of what the claims are and the grounds upon which they rest." *See, Swierkiewicz v. Sorema NA*, (2002) 534 US 506, 514. A motion under Rule 12(b)(1) challenges the Court's subject matter jurisdiction while a motion to dismiss under Rule 12(b)(6) focuses on the Complaint's legal sufficiency. Dismissal is proper only where the facts alleged fail to state any claim upon which relief may be granted. All well pled facts in the complaint must be taken as true and all reasonable inferences that may be drawn from those facts must be in Plaintiff's favor. *See, e.g., Quality Mercury, Inc. v. Ford Motor Co.*, 542 F.2d 466, 468-469 (8th Cir. 1976).

### A. THE FIRST CAUSE OF ACTION SHOULD NOT BE DISMISSED.

Defendants attack the Civil RICO claim on several grounds. These are as follows:

1. Plaintiffs lack standing to bring a Civil RICO claim;
2. The Complaint fails to establish "racketeering activity";
3. Plaintiffs have failed to allege predicate acts and have failed to show proximate cause of injury;
4. Allegations of fraud and mistake must be pled with particularity; and,
5. Plaintiffs' RICO claims are barred by the four-year statute of limitations.

Plaintiffs disagree with these arguments, as set forth below. However, if the Court grants the motion to dismiss, Plaintiffs can cure these defects and should be granted leave to amend.

The elements of a civil RICO claim are as follows:

(1) conduct
(2) of an enterprise
(3) through a pattern
(4) of racketeering activity ("predicate acts")
(5) causing injury to plaintiff's "business or property." *Grimmett v. Brown,* 75 F.3d 506, 510 (9th Cir. 1996); citing 18 USC §§ 1964©, 1962©.

There is one enterprise targeted by Plaintiffs under RICO. The subject enterprise is Strategic Lending Corporation. Under 18 USC section 1961(4), a corporation "or group of individuals" may be considered an enterprise for purposes of RICO.

### 1. Plaintiffs do not lack standing.

Plaintiffs do not lack standing to bring the Civil RICO Claim. Plaintiffs were injured in their property. Clearly, Rita and Arthur were directly damaged by the fraudulent loans and other conduct of the defendants. Ed's damage, to his inheritance and his credit score caused by the fraudulent activity of the defendants.

> In considering the Court of Appeals' second prerequisite for a private civil RICO action injury – "injury . . . caused by an activity which RICO was designed to deter" – we are somewhat hampered by the vagueness of that concept. Apart from reliance on the general purposes of RICO and a reference to "mobsters," the court provided scant indication of what the requirement of racketeering injury means. *Sedima, SPRL v. Imrex Co.* (1985) 105 Sct 3275, 3284.

> Section 1964( c) authorizes a private suit by "[a]ny person injured in his business or property by reason of a violation of §1962." Section 1962 in turn makes it unlawful for "any person" – not just mobsters – to use money derived from a pattern of racketeering activity, . . . to conduct an enterprise through a pattern of racketeering activity. §§ 1962(a)-( c). If the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under §1964( c). *Sedima, SPRL v. Imrex Co.* (1985) 105 Sct 3275, 3285.

Defendants' conduct must be a proximate cause of Plaintiffs' alleged injuries. *See Holmes v. Sec. Investor Prot. Corp.*, (1992) 503 U.S. 258, 268. In a RICO case, proximate cause is shown when "the wrongful conduct [is] a substantial and foreseeable cause" of the injury and the relationship between the wrongful conduct and the injury is "logical and not speculative." *See Trollinger v. Tyson Foods, Inc.*, (6th Cir. 2004) 370 F.3d 602, 615.

Moving parties are not claiming that Rita was not injured. Despite his marriage to Rita, moving parties are claiming Arthur cannot show proximate cause. As shown above, Arthur can show his losses were proximately caused by the defendants.

So, too, Ed suffered losses. These losses were proximately caused by Defendants. Ed can allege and prove an injury to his property interest, the "legal entitlement to business relations unhampered by schemes prohibited by the RICO predicate statutes." *Mendoza v. Zirkle Fruit*

*Co.,* (9th Cir 2002) 301 F.3d 1163, 1168 n. 4.  The Ninth Circuit has held this property interest sufficient to provide standing under RICO.  *Id.* at 1168.  Ed has alleged and can further allege such an interference with business relations.

### 2. The Complaint Establishes "Racketeering Activity."

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.  18 USC §1962( c).

To establish liability under §1962©, one must allege and prove the existence of two distinct entities:

(1) a "person"; and,

(2) an "enterprise" that is not simply the same "person" referred to by a different name."  *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 161, 121 S.Ct. 2087 (2001); *see, also Rae v. Union Bank,* 725 F.2d 478, 481 (9th Cir. 1984).

The problem with arguments of the moving parties is that they ignore the expansive definition of "racketeering" in the relevant section.  That section includes mail fraud (18 USC §1341), wire fraud (18 USC §1343), and, financial institution fraud (18 USC §1344).  All of these are alleged in the Complaint, and Plaintiffs can allege specific activity of racketeering.

For example, racketeering by defendants included mail and wire fraud arising from the inflated and fraudulent loans and mis-representations made to Plaintiffs in connection with the loans, the efforts to have Ed falsify loan documents, loan documents falsified by Defendants, and the false promises made to induce Ed to work at Strategic.  That one or more of these individual defendants continues to act as a mortgage broker (Swensen) is a continued threat of criminal activity.  18 USC §§ 1961(5) and 1962.

### 3. Plaintiffs have alleged predicate acts and can show proximate cause of injury.

This argument by the moving parties duplicates the arguments advanced in points 1 and 2 above.  Plaintiffs can and will provide specific dates of acts of wire fraud, mail fraud, and financial institution fraud committed by these defendants through August 2005.

### 4. Allegations of fraud and mistake can be pled with particularity.

Plaintiffs can and will provide specific dates of acts of wire fraud, mail fraud, and financial institution fraud committed by these defendants through August 2005.

### 5. Plaintiffs' RICO claims are *not* barred by the four-year statute of limitations.

Plaintiffs can and will provide specific dates of acts of wire fraud, mail fraud, and financial institution fraud committed by these defendants through August 2005.

### 6. Conspiracy.

While not addressed by the defense, RICO conspiracy is governed by traditional concepts of conspiracy law. A "conspiracy to violate RICO should not require anything beyond that required for a conspiracy to violate any other crimes." *United States v. Neapolitan,* 791 F.2d 489, 497 (7th Cir. 1986). The drafters of section 1962(d) intended to target, like all provisions prohibiting conspiracies, the agreement to violate RICO's substantive provisions, not the actual violations themselves. *See, United States v. Glecier,* 923 F.2d 496, 500 (7th Cir. 1990), *cert. denied,* 112 S.Ct. 54 (1991); *United States v. Angiulo,* 847 F.2d 956, 964 (1st Cir. 1987), *cert. denied,* 488 U.S. 852, 109 S.Ct. 138, and *cert. denied,* 488 U.S. 928, 109 S.Ct. 314 (1988).

Thus, while a conspiracy to violate RICO requires an agreement to commit a pattern of predicate acts, it does not require that any predicate acts actually be committed.[4] *United States v. Phillips,* 664 F.2d 971, 1038 (5th Cir. 1981), *cert. denied.* It is true that an agreement to violate RICO, standing alone, cannot harm anybody. Some act in furtherance of that agreement (an "overt act") is necessary. However, because RICO conspiracy does not require commission of a predicate act, the act causing Plaintiffs' injuries need not be a predicate act of racketeering. A person directly injured by an overt act in furtherance of a RICO conspiracy has been injured "by reason of" the conspiracy.

A conspiracy to violate RICO's substantive provisions is itself a violation of RICO. 18 USC §1962(d). A person injured "by reason of" the conspiracy has been injured "by reason of"

---

[4]   Of course, here Plaintiffs alleged several predicate acts by each defendant.

1   the RICO violation. That is all that § 1964© requires for standing to bring a civil RICO action.

2   Thus, the Complaint contains adequate factual allegations to support a cause of action for

3   RICO violations against these defendants, based on the above.

### B. THE STATE LAW CAUSES OF ACTION SHOULD NOT BE DISMISSED.

5   The Rules of Decision Act, 28 USC §1652, requires application of state statutes of

6   limitations unless a timeliness rule drawn from elsewhere in federal law should be applied. *See,*

7   *Agency Holding Corp. v. Malley-Duff & Assocs.*, (1987) 483 US 143, 147, 107 SCt 2759.

8   Federal courts deciding state law claims are required to apply the state's statutes of limitations.

9   *Erie R.R. Co. v. Tompkins,* (1938) 304 U.S. 64, 58 S.Ct. 817; *Klaxon Co. v. Stentor Elec. Mfg.*

10  *Co.,* (1941) 313 U.S. 487, 61 S.Ct. 1020.

11  Moving parties are wrong: The primary purpose of this action is to bring these defendants

12  to justice. In the past year, Plaintiffs have learned of other victims of the fraud perpetrated by

13  these defendants. Other people were not as "fortunate" as the plaintiffs here; that is, unlike Rita

14  and Arthur, these other victims of Weichler, Strategic, et al., did not have sufficient equity to

15  borrow their way out of the debt created by Defendants' predatory practices.

16  Yes, there are wage and related claims by Ed Summerfield. Yes, those claims were filed

17  in state court and then voluntarily dismissed. However, as illustrated above, Ed's claims are so

18  intertwined with all three plaintiffs' federal RICO claims that these supplemental state claims

19  form part of the same case and controversy.

20  One decision cited by the moving parties is *Miller v. Yokohama Tire Corp.* [(9th Cir 2004)

21  358 F.3d 616]. In *Miller*, the Ninth Circuit found as follows:

22  Christopher Miller alleges that he is a victim of a mail fraud scheme by Yokohama Tire
    Corporation and its managers, who misrepresented his entitlement to overtime pay and
23  consequently underpaid him. The district court dismissed Miller's RICO claims under
    Federal Rule of Civil Procedure 12(b)(6), without leave to amend, and remanded to state
24  court his remaining state law claims. Because Miller's complaint, as a matter of law,
    does not allege actionable fraud under the common law, we affirm. In affirming, we
25  point out that Miller is not without a remedy in state court. We decline to expand RICO's
    reach to transform the federal courts into a general venue for ordinary state wage
26  disputes. *Id., at 618.*

27  The present case is not like *Miller*. There are three victims of fraud, not one. Second,

28

*Summerfield, et al., v. Strategic, et al.* (No. C-09-2609-HRL)
PLAINTIFFS' OPPOSITION TO JOINT MOTION TO DISMISS   - 8 -

1  only one victim claims unpaid wages.  Third, fraud alleged here does not involve misinformation
2  given by an employer as to statutory rights; rather, this case as – it relates to wages – involves
3  fraudulent representations made to induce Ed to work for Defendants so that Defendants could
4  prey upon Ed's parents and commit acts of wire, mail, and financial institution fraud.

5  There are other differences illustrating why the *Miller* decision is inapposite.[5]

6  Nor are Ed's claims barred by the statute of limitations.  The California Supreme Court
7  has held, "[T]he effect of equitable tolling is that the limitations period stops running during the
8  tolling event, and begins to run again only when the tolling event has concluded." *Balloon v.*
9  *Superior Court* (1995) 39 Cal.App.4th 1116, 1122.

10  Timely notice requirements of equitable means that the first claim must have been filed
11  within the statutory period.  There is no dispute that this is true here.

12  The filing of the first claim must alert the defendant in the second claim of the need to
13  begin investigating the facts which form the basis for the second claim.  Again, according to
14  Weichler's moving papers, all defendants named here had notice of Ed's state law claims.[6]
15  Generally this means that the defendant in the first claim is the same one being sued in the
16  second.  *Collier v. City of Pasadena* (1983) 142 Cal.App.3d 917, 924.

17  "The second prerequisite essentially translates to a requirement that the facts of the two
18  claims be identical or at least so similar that the defendant's investigation of the first claim will
19  put him in a position to fairly defend the second."  *Id.* at 925."

20  Defendants admitted in their moving papers the identical nature of these state law claims
21  made by Ed Summerfield.  Thus, there was no prejudice to the defendants caused by"delay".

---

[5]  The plaintiff in *Miller* had filed an amended complaint and was denied further leave.

[6]  Plaintiff never misrepresented service on other defendants to the Superior Court.  E-mail confirmations, but not proofs of service, were provided to Plaintiff's counsel by the process server.  These are not produced here because of the crush of time, but will be submitted.

1  **III.    CONCLUSION**

2         The joint motion should be denied.  If granted in whole or in part, Plaintiffs should be

3  granted leave to amend at least one time.  Leave "shall be freely given when justice so requires,"

4  as it does here, in this case, with these facts.

6  Date:   February 2, 2010                    /s/ Russell A. Robinson
                                                Law Office of Russell A. Robinson
7                                               By:     Russell A. Robinson
                                                Attorneys for Plaintiffs
8                                               ED SUMMERFIELD, ARTHUR SUMMERFIELD, and
                                                RITA SUMMERFIELD