1  Russell A. Robinson, 163937
   Law Office of Russell A. Robinson
2  345 Grove Street, First Floor
   San Francisco CA 94102
3  TEL:   415.255.0462
   FAX:   415.431.4526
4
   Counsel for Plaintiffs
5  ED SUMMERFIELD, ARTHUR
   SUMMERFIELD, and RITA SUMMERFIELD
6

7

8                         UNITED STATES DISTRICT COURT

9                         NORTHERN DISTRICT OF CALIFORNIA

10

11 ED SUMMERFIELD, ARTHUR              ) No.    C-09-2609-HRL
   SUMMERFIELD, and RITA SUMMERFIELD,  )
12                                     ) **PLAINTIFFS' OPPOSITION TO**
                  Plaintiffs,          ) **DEFENDANT ALI WEICHLER'S**
13                                     ) **MOTION TO DISMISS**
   v.                                  ) [Jury Trial Demanded]
14                                     )
   STRATEGIC LENDING CORPORATION, ET   ) Date:      August 31, 2010
15 AL.,                                ) Time:      10:00 a.m.
                                       ) Courtroom: 2
16                Defendants.          )
                                       )
17

18 **I.     INTRODUCTION**

19         This action commenced June 12, 2009.  After the initial complaint was dismissed with

20 leave to amend and the First Amended Complaint filed, this Court granted Plaintiffs leave to

21 amend and to file a Second Amended Complaint (SAC); the SAC is the operative complaint.

22         Defendant Eric Swenson is in bankruptcy, Chapter 7.  Defendant Leo Agustin has been

23 defaulted.  Defendant Ali Weichler alone moves to dismiss the SAC under Federal Rules of Civil

24 Procedure (FRCP), Rules 12(b)(1) and 12(b)(6).

25         In a somewhat repetitive and rambling motion, Weichler essentially argues that the FAC

26 – with entire action – should be dismissed without leave to amend because, *inter alia*, Plaintiffs

27 lack standing, the SAC fails to establish "racketeering activity," predicate and fraudulent acts are

28
   *Summerfield, et al., v. Strategic, et al.* (No. C-09-2609-HRL)
   PLAINTIFFS' OPPOSITION TO DEFENDANT
   ALI WEICHLER'S MOTION TO DISMISS

1  not alleged with sufficient particularity, the RICO claims are barred by the applicable four-year-

2  statute of limitations, and Ed Summerfield's claims are all barred in any event for many reasons.

3      Plaintiffs oppose the motion to dismiss without leave to amend, as addressed below.  The

4  SAC added new and additional facts, the significance of which is not addressed by Weichler.

5  Plaintiffs claims are not barred and each Plaintiff has standing.

6  **II.     BACKGROUND**

7       In 2002, Plaintiff Rita Summerfield friend, Gisela, introduced Rita to Gisela's son,

8  Defendant Weichler.  Through this connection, Weichler learned that Rita and her husband,

9  Arthur Summerfield owned a home in Sunnyvale, several condominiums in the South Bay, a

10 beach house in Southern California, and a luxury penthouse in Munich, Germany, with a grand

11 view of the Oktoberfest fair grounds.

12     Through this social connection, Weichler also learned most of these properties were

13 owned outright by the Summerfields.  Weichler, who exercised control and ownership over

14 Defendant Strategic Lending Corporation, saw an opportunity to capitalize on the Summerfields

15 and their equity.  He thus offered a job to Ed Summerfield, the son of Rita and Arthur.

16     As alleged in the SAC, a critical event in the conspiracy to defraud the plaintiffs occurred

17 when Ed Summerfield was hired by Weichler and Strategic.   But for the false promises made to

18 Ed, Weichler and Strategic would not have been able to destroy the Summerfields' savings and

19 equity through a pattern of racketeering.

20     Initially, as an inducement to Ed, Weichler promised Ed untold riches and upwards of

21 $1,000,000 annual salary if Ed would come to work at Strategic and learn the business from

22 Weichler.  Weichler maintained his hold on Ed for about two years through repeated promises of

23 riches and education in the industry.

24     Weichler and Strategic never delivered on their promises to Ed.

25     Instead, Weichler harassed and harangued Ed, Rita, and Arthur into several refinances.

26 Using promises to Ed as bait, Weichler eventually convinced Rita and Arthur to refinance their

27 home through Strategic. At the time of this transaction in 2004, Rita and Arthur were one year

28

*Summerfield, et al., v. Strategic, et al.* (No. C-09-2609-HRL)
PLAINTIFFS' OPPOSITION TO DEFENDANT
ALI WEICHLER'S MOTION TO DISMISS             - 2 -

1  from paying off the mortgage on this property.  Nonetheless, succumbing to Weichler's promises
2  that the loan was a "superior product" and that he would make Ed rich, Rita and Arthur signed
3  on the proverbial dotted line.

4  The loan Weichler and Strategic sold the Summerfields was hugely profitable for the
5  defendants.  Unfortunately, that loan was a terrible deal for the Summerfields.

6  Weichler had, by this time, so ingratiated himself into the Summerfield home that he was
7  secretly meeting with Arthur.  Arthur, born January 1, 1931, previously suffered a debilitating
8  injury at work and was, at the time of these dealings with Weichler, undergoing treatment for
9  cancer.  Weichler started Arthur day-trading.

10  In the course of day-trading, Arthur – who at all relevant times acted at direction of
11  Weichler – lost over $500,000  The online brokerage firm exercised its right and made a margin
12  call on Arthur.  Having not worked since 1992 because of his injuries, Arthur needed to borrow
13  money.  To meet Arthur's needs, Weichler was ready with another predatory loan. [SAC, ¶36]

14  Throughout 2004 and into April 2005, Weichler, exercising control over Strategic,
15  preyed upon Plaintiffs. Then, the Summerfields stopped buying Strategic loans.  They were
16  unable to keep borrowing.  Swensen, Agustin, and Weichler, unable to profit any longer from
17  Rita and Arthur – and having not made good on their promises to Ed – terminated Ed in late
18  April 2005 and then cowed him into walking away through false threats. [SAC, ¶37]

19  After Ed was terminated, Weichler continued to re-assure Rita and Arthur, fraudulently,
20  that the loans he and Strategic had sold were good, solid loans.  These fraudulent reassurances,
21  via telephone and using the aforementioned personal connection of Weichler's mother, Gisela,
22  kept Plaintiffs ignorant of the true nature of the predatory and fraudulent loan products they had
23  been sold until about August 16, 2005. [SAC, ¶38]

24  As part of the racketeering pattern engaged in by Defendants, they submitted false loan
25  documents and applications on behalf other borrowers.  Plaintiffs plead in the SAC with
26  specificity how these fraudulent submissions were made, what the fraudulent submissions were,
27  and when each was made. [SAC, ¶40]

28

*Summerfield, et al., v. Strategic, et al.* (No. C-09-2609-HRL)
PLAINTIFFS' OPPOSITION TO DEFENDANT
ALI WEICHLER'S MOTION TO DISMISS          - 3 -

1     Ed, who had never been paid what he was promised and had not received legitimate wages while at Strategic, filed a claim with the California Labor Commissioner, and followed with the state court action mentioned in the moving papers. Ed caused that case to be dismissed, without prejudice, in June 2009. Plaintiffs filed this federal court action the same date upon which that state court action was dismissed.

    Defendant Weichler moves for dismissal under Federal Rules of Civil procedure, Rules 12(b)(1) and 12(b)(6). Plaintiffs oppose dismissal. The Court should deny the motion. However, should the Court grant all or part of the motion, Plaintiffs pray leave to amend. Any defects may be easily cured through an initial amendment.

## II. ARGUMENT

    Under FRCP, Rule 8(a), Plaintiffs' must provide "fair notice of what the claims are and the grounds upon which they rest." *See, Swierkiewicz v. Sorema NA*, (2002) 534 US 506, 514. A motion under Rule 12(b)(1) challenges the Court's subject matter jurisdiction while a motion to dismiss under Rule 12(b)(6) focuses on the Complaint's legal sufficiency. Dismissal is proper only where the facts alleged fail to state any claim upon which relief may be granted. All well pled facts in the complaint must be taken as true and all reasonable inferences that may be drawn from those facts must be in Plaintiff's favor. *See, e.g., Quality Mercury, Inc. v. Ford Motor Co.,* 542 F.2d 466, 468-469 (8th Cir. 1976).

### A. THE FIRST CAUSE OF ACTION SHOULD NOT BE DISMISSED.

Defendants attack the Civil RICO claim on several grounds. These are as follows:

1. Plaintiffs lack standing to bring a Civil RICO claim;
2. The Complaint fails to establish "racketeering activity";
3. Plaintiffs have failed to allege predicate acts and have failed to show proximate cause of injury;
4. Allegations of fraud and mistake must be pled with particularity; and,
5. Plaintiffs' RICO claims are barred by the four-year statute of limitations.

Plaintiffs disagree with these arguments, as set forth below. However, if the Court grants

*Summerfield, et al., v. Strategic, et al.* (No. C-09-2609-HRL)
PLAINTIFFS' OPPOSITION TO DEFENDANT
ALI WEICHLER'S MOTION TO DISMISS      - 4 -

the motion to dismiss, Plaintiffs can cure these defects and should be granted leave to amend.

The elements of a civil RICO claim are as follows:

(1)   conduct

(2)   of an enterprise

(3)   through a pattern

(4)   of racketeering activity ("predicate acts")

(5)   causing injury to plaintiff's "business or property." *Grimmett v. Brown,* 75 F.3d 506, 510 (9th Cir. 1996); citing 18 USC §§ 1964( c), 1962( c).

There is one enterprise targeted by Plaintiffs under RICO. The subject enterprise is Strategic Lending Corporation. Under 18 USC section 1961(4), a corporation "or group of individuals" may be considered an enterprise for purposes of RICO.

### 1. Plaintiffs do not lack standing.

Plaintiffs do not lack standing to bring the Civil RICO Claim. Plaintiffs were injured in their property. Clearly, Rita and Arthur were directly damaged by the fraudulent loans and other conduct of the defendants. Ed's damage, to his inheritance and his credit score, were caused by the fraudulent activity of the defendants.

> In considering the Court of Appeals' second prerequisite for a private civil RICO action injury – "injury . . . caused by an activity which RICO was designed to deter" – we are somewhat hampered by the vagueness of that concept. Apart from reliance on the general purposes of RICO and a reference to "mobsters," the court provided scant indication of what the requirement of racketeering injury means. *Sedima, SPRL v. Imrex Co.* (1985) 105 Sct 3275, 3284.

> Section 1964( c) authorizes a private suit by "[a]ny person injured in his business or property by reason of a violation of §1962." Section 1962 in turn makes it unlawful for "any person" – not just mobsters – to use money derived from a pattern of racketeering activity, . . . to conduct an enterprise through a pattern of racketeering activity. §§ 1962(a)-( c). If the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under §1964( c). *Sedima, SPRL v. Imrex Co.* (1985) 105 Sct 3275, 3285.

Defendants' conduct must be a proximate cause of Plaintiffs' alleged injuries. *See Holmes v. Sec. Investor Prot. Corp.,* (1992) 503 U.S. 258, 268. In a RICO case, proximate cause is shown when "the wrongful conduct [is] a substantial and foreseeable cause" of the injury and

*Summerfield, et al., v. Strategic, et al.* (No. C-09-2609-HRL)
PLAINTIFFS' OPPOSITION TO DEFENDANT
ALI WEICHLER'S MOTION TO DISMISS                     - 5 -

the relationship between the wrongful conduct and the injury is "logical and not speculative." *See Trollinger v. Tyson Foods, Inc.,* (6th Cir. 2004) 370 F.3d 602, 615.

Moving party is not claiming that Rita was not injured. Despite his marriage to Rita, moving party claims Arthur cannot show proximate cause. As shown above, Arthur can show his losses were proximately caused by the defendants. After all California was and remains a community property state.

So, too, Ed suffered losses. These losses were proximately caused by Defendants. Ed can allege and prove an injury to his property interest, the "legal entitlement to business relations unhampered by schemes prohibited by the RICO predicate statutes." *Mendoza v. Zirkle Fruit Co.,* (9th Cir 2002) 301 F.3d 1163, 1168 n. 4. The Ninth Circuit has held this property interest sufficient to provide standing under RICO. *Id.* at 1168. Ed has alleged and can further allege such an interference with business relations.[1]

### 2. The Complaint Establishes "Racketeering Activity."

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. 18 USC §1962( c).

To establish liability under §1962( c), one must allege and prove the existence of two distinct entities:

(1) a "person"; and,

(2) an "enterprise" that is not simply the same "person" referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 161, 121 S.Ct. 2087 (2001); *see, also Rae v. Union Bank,* 725 F.2d 478, 481 (9th Cir. 1984).

Moving party ignores the expansive definition of "racketeering" in the relevant section. That section includes mail fraud (18 USC §1341), wire fraud (18 USC §1343), and, financial

---

[1] Ed's RICO claims are not the same as his state law claims. But for Ed's hire by Weichler, Weichler would not have been able to use Ed to defraud Ed's parents. While Ed may have understood that Weichler was defrauding other borrowers and lenders alike, the SAC does not contain any facts by which one may infer that Ed knew his parents were defrauded through racketeering before August 16, 2005.

institution fraud (18 USC §1344). All of these are alleged in the Complaint, and Plaintiffs can allege specific activity of racketeering.

For example, racketeering by defendants included mail and wire fraud arising from the inflated and fraudulent loans and mis-representations made to Plaintiffs in connection with the loans, the efforts to have Ed falsify loan documents, loan documents falsified by Defendants, and the false promises made to induce Ed to work at Strategic. That one or more of these individual defendants continues to act as a mortgage broker (Swensen) is a continued threat of criminal activity. 18 USC §§ 1961(5) and 1962.

### 3. Plaintiffs have alleged predicate acts and can show proximate cause of injury.

This argument by moving party duplicates the arguments advanced in points 1 and 2 above. Plaintiffs have alleged provide specific dates of acts of wire fraud, mail fraud, and financial institution fraud committed by these defendants through August 16, 2005.

One problem in addressing arguments advanced by Weichler is that, while he cites cases with aplomb and lists elements with detail, he does not analyze the facts in the SAC in view of the relevant authorities. For example, Weichler contends the allegations of fraud must be pled with particularity, but ignores the very specific fact pled on August 16, 2005, by telephone; Rita had sought assurances from Weichler about the final loan secured by the plaintiffs' residence and Weichler falsely re-assured Rita that the loan was a "superior loan".

There are instances of particular, predicate acts in the SAC. The SAC describes, for example, facsimile transmissions (wire) and telephone averments by Weichler on May 19, 20, 22, 22 (again), 29, and finally on June 23, 2004. These predicate acts caused Plaintiffs to proceed with the subject loans and ultimately damaged Plaintiffs – as alleged.

### 4. Plaintiffs' RICO claims are *not* barred by the four-year statute of limitations.

Plaintiffs has provided specific dates of acts of wire fraud, mail fraud, and financial institution fraud committed by these defendants through August 16, 2005. Each overt act in

furtherance of the conspiracy – part of the violation – starts the statutory period running again, "regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." *Klehr v. AO Smith Corp.* (1997) 521 US 179, 117 S.Ct. 1984, 1990-1991.[2]

Moreover, "federal equitable tolling doctrines apply" to RICO claims. *Enrich v. Touche Ross & Co.,* (9th Cir. 1988) 846 F.2d 1190, 1199. Plainitffs, for example, plead with specificity in paragraph 38 of the SAC that Weichler intentionally misled Rita. This allegation established fraudulent concealment.

### 5. Conspiracy.

RICO conspiracy is governed by traditional concepts of conspiracy law. A "conspiracy to violate RICO should not require anything beyond that required for a conspiracy to violate any other crimes." *United States v. Neapolitan,* 791 F.2d 489, 497 (7th Cir. 1986). The drafters of section 1962(d) intended to target, like all provisions prohibiting conspiracies, the agreement to violate RICO's substantive provisions, not the actual violations themselves. *See, United States v. Glecier,* 923 F.2d 496, 500 (7th Cir. 1990), *cert. denied,* 112 S.Ct. 54 (1991); *United States v. Angiulo,* 847 F.2d 956, 964 (1st Cir. 1987), *cert. denied,* 488 U.S. 852, 109 S.Ct. 138, and *cert. denied,* 488 U.S. 928, 109 S.Ct. 314 (1988).

Thus, while a conspiracy to violate RICO requires an agreement to commit a pattern of predicate acts, it does not require that any predicate acts actually be committed.[3] *United States v. Phillips,* 664 F.2d 971, 1038 (5th Cir. 1981), *cert. denied.*

It is true that an agreement to violate RICO, standing alone, cannot harm anybody. Some act in furtherance of that agreement (an "overt act") is necessary. However, because RICO conspiracy does not require commission of a predicate act, the act causing Plaintiffs' injuries need not be a predicate act of racketeering. A person directly injured by an overt act in

---

[2] A "new predicate act" more than four years after the last such act would not revive dead claims, however. *Id.* Of course, this is not the case at bar where all the acts are alleged to have happened in the 2003-2005 period.

[3] Of course, here Plaintiffs alleged several predicate acts by each defendant.

1 furtherance of a RICO conspiracy has been injured "by reason of" the conspiracy.

2 A conspiracy to violate RICO's substantive provisions is itself a violation of RICO. 18
3 USC §1962(d). A person injured "by reason of" the conspiracy has been injured "by reason of"
4 the RICO violation. That is all that § 1964© requires for standing to bring a civil RICO action.

5 Thus, the Complaint contains adequate factual allegations to support a cause of action for
6 RICO violations against these defendants, based on the above.

7 **B. THE STATE LAW CAUSES OF ACTION SHOULD NOT BE DISMISSED.**

8 The Rules of Decision Act, 28 USC §1652, requires application of state statutes of
9 limitations unless a timeliness rule drawn from elsewhere in federal law should be applied. *See,*
10 *Agency Holding Corp. v. Malley-Duff & Assocs.*, (1987) 483 US 143, 147, 107 SCt 2759.
11 Federal courts deciding state law claims are required to apply the state's statutes of limitations.
12 *Erie R.R. Co. v. Tompkins,* (1938) 304 U.S. 64, 58 S.Ct. 817; *Klaxon Co. v. Stentor Elec. Mfg.*
13 *Co.,* (1941) 313 U.S. 487, 61 S.Ct. 1020.

14 Moving party is wrong: The primary purpose of this action is to bring these defendants to
15 justice. In the past year, Plaintiffs have learned of other victims of the fraud perpetrated by these
16 defendants. Other people were not as "fortunate" as the plaintiffs here; that is, unlike Rita and
17 Arthur, these other victims of Weichler, Strategic, et al., did not have sufficient equity to borrow
18 their way out of the debt created by Defendants' predatory practices.

19 Yes, there are wage and related claims by Ed Summerfield. Yes, those claims were filed
20 in state court and then voluntarily dismissed. However, as illustrated above, Ed's claims are so
21 intertwined with all three plaintiffs' federal RICO claims that these supplemental state claims
22 form part of the same case and controversy.

23 One decision cited by Weichler is *Miller v. Yokohama Tire Corp.* [(9th Cir 2004) 358 F.3d
24 616]. In *Miller*, the Ninth Circuit found as follows:

25 Christopher Miller alleges that he is a victim of a mail fraud scheme by Yokohama Tire
Corporation and its managers, who misrepresented his entitlement to overtime pay and
26 consequently underpaid him. The district court dismissed Miller's RICO claims under
Federal Rule of Civil Procedure 12(b)(6), without leave to amend, and remanded to state
27 court his remaining state law claims. Because Miller's complaint, as a matter of law,

28

*Summerfield, et al., v. Strategic, et al.* (No. C-09-2609-HRL)
PLAINTIFFS' OPPOSITION TO DEFENDANT
ALI WEICHLER'S MOTION TO DISMISS         - 9 -

does not allege actionable fraud under the common law, we affirm. In affirming, we point out that Miller is not without a remedy in state court. We decline to expand RICO's reach to transform the federal courts into a general venue for ordinary state wage disputes. *Id., at 618.*

The present case is not like *Miller*. There are three victims of fraud, not one. Second, only one victim claims unpaid wages. Third, fraud alleged here does not involve misinformation given by an employer as to statutory rights; rather, this case as – it relates to wages – involves fraudulent representations made to induce Ed to work for Defendants so that Defendants could prey upon Ed's parents and commit acts of wire, mail, and financial institution fraud.

There are other differences illustrating why the *Miller* decision is inapposite.[4]

Nor are Ed's claims barred by the statute of limitations. The California Supreme Court has held, "[T]he effect of equitable tolling is that the limitations period stops running during the tolling event, and begins to run again only when the tolling event has concluded." *Balloon v. Superior Court* (1995) 39 Cal.App.4th 1116, 1122.

Timely notice requirements of equitable means that the first claim must have been filed within the statutory period. There is no dispute that this is true here.

The filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim. Again, according to Weichler's moving papers, all defendants named here had notice of Ed's state law claims.[5] Generally this means that the defendant in the first claim is the same one being sued in the second. *Collier v. City of Pasadena* (1983) 142 Cal.App.3d 917, 924.

"The second prerequisite essentially translates to a requirement that the facts of the two claims be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second." *Id.* at 925."

Defendants admitted in their moving papers the identical nature of these state law claims

---

[4]   The plaintiff in *Miller* had filed an amended complaint and was denied further leave.

[5]   Plaintiff never misrepresented service on other defendants to the Superior Court. E-mail confirmations, but not proofs of service, were provided to Plaintiff's counsel by the process server. These are not produced here because of the crush of time, but will be submitted.

*Summerfield, et al., v. Strategic, et al.* (No. C-09-2609-HRL)
PLAINTIFFS' OPPOSITION TO DEFENDANT
ALI WEICHLER'S MOTION TO DISMISS                    - 10 -

made by Ed Summerfield.  Thus, there was no prejudice to the defendants caused by"delay".

## III.     CONCLUSION

The joint motion should be denied.  If granted in whole or in part, Plaintiffs should be granted leave to amend at least one more time.  Leave "shall be freely given when justice so requires," as it does here, in this case, with these facts.


Date:   August 10, 2010                         /s/ Russell A. Robinson
                                                Law Office of Russell A. Robinson
                                                By:     Russell A. Robinson
                                                Counsel for Plaintiffs
                                                ED SUMMERFIELD, ARTHUR SUMMERFIELD, and
                                                RITA SUMMERFIELD