**United States District Court**
For the Northern District of California

1          ** E-filed September 20, 2010 **

2

3

4

5

6

7                          NOT FOR CITATION

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

11   ED SUMMERFIELD, ARTHUR                    No. C09-02609 HRL
     SUMMERFIELD, and RITA SUMMERFIELD,
12                                             **ORDER GRANTING DEFENDANTS'**
             Plaintiffs,                       **MOTION TO DISMISS PLAINTIFFS'**
13       v.                                    **SECOND AMENDED COMPLAINT**

14   STRATEGIC LENDING CORPORATION, ALI        **[Re: Docket No. 74]**
     WEICHLER, LEONARDO "LEO" AGUSTIN,
15   ERIC SWENSON, and DOES 1–30,

16           Defendants.

17   _____/

18          This case originally arose out of plaintiff Ed Summerfield's ("Ed") former employment with

19   mortgage company Strategic Lending Corporation ("SLC").  In April 2007, Ed sued SLC, his

20   former boss, Ali Weichler ("Weichler"), and Weichler's purported partners at SLC, Leo Agustin

21   ("Agustin") and Eric Swensen ("Swensen") (collectively, "Defendants") in California state court for

22   violations of the California Labor Code and the common law.[1]  A little over two years later, though,

23   in June 2009, Ed voluntarily dismissed his state court action and filed a complaint in federal court

24   which added his parents, Arthur Summerfield ("Arthur") and Rita Summerfield ("Rita"), as

25   plaintiffs as well as a federal claim for violation of the Racketeer Influenced and Corrupt

26   Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68.  Weichler now moves to dismiss the action

27

28   _____
     [1] Ed originally sued only SLC and Weichler, but later added Agustin and Swensen.

United States District Court

For the Northern District of California

1    pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[2]  (Docket No. 74 ("Motion").)

2    Upon consideration of the parties' briefs and the arguments presented at oral argument, the Court

3    grants Weichler's motion.[3]

### BACKGROUND

5         Ed, Arthur, and Rita (collectively, "Plaintiffs") allege in their Second Amended Complaint

6    that Defendants engaged in a widespread scheme to defraud borrowers and lenders of mortgage

7    loans by forging documents, inflating assets, and committing other illegalities with respect to loans

8    brokered by Defendants, including those made to Arthur and Rita.  (Docket No. 68 ("Second

9    Amended Complaint" or "SAC"), ¶ 40 & 42-46.)  As a part of their scheme, Plaintiffs allege that

10   "Weichler planned to induce and did induce Ed to work for SLC so that Weichler could sell junk

11   loans (or mortgages) to Ed's equity-rich parents."  (*Id*. at ¶ 15.)  To that end, they allege that

12   Weichler induced Ed to join SLC in May 2003 with a "guarantee" that Ed would be making at least

13   one million dollars a year within four years.  (*Id*. at ¶¶ 14 & 17.)  Ed claims that he took the job in

14   reliance on Weichler's promises, but that things did not go as planned.  Indeed, the Second

15   Amended Complaint provides a lengthy list of the various wrongs that Weichler allegedly

16   committed against Ed during Ed's employment, all of which eventually culminated in Ed's

17   termination on April 29, 2005.  (*Id*. at ¶¶ 17-30.)

18        In addition to the allegations surrounding Ed's employment, Plaintiffs also allege that

19   Defendants harmed Arthur and Rita.  "Using promises to Ed as bait," Plaintiffs allege that Weichler

20   "met with Rita and Arthur many times" while Ed worked for SLC and convinced them "to re-

21   finance their home, to take a line of equity [against their home], and to borrow heavily on other

22   ───────────────

23   [2] As of August 23, SLC does not appear to have been served with any federal complaint or
     summons, and only after several time extensions did Plaintiffs serve Weichler and Swenson with the
24   federal complaint in December 2009.  Agustin, who was served in April 2010, never responded to or
     answered the complaint and so his default was entered, and Swensen eventually filed for bankruptcy
25   and is thus subject to an automatic stay.  As such, Weichler is the only defendant at issue at this
     time.
26   [3] Plaintiffs have not yet served SLC with their complaint and default was entered as Agustin.
     Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, all parties who have
27   appeared in this action have expressly consented that all proceedings may be heard and finally
     adjudicated by the undersigned.  Defendants who have not been served are not deemed "parties" to
28   the action within the rules requiring consent to magistrate judge jurisdiction.  *See Neals v. Norwood*,
     59 F.3d 530, 532 (5th Cir. 1995); *see also United States v. Real Prop.*, 135 F.3d 1312, 1317 (9th
     Cir. 1998).

property, all to the benefit and unlawful gain of the Defendants." (*Id*. at ¶¶ 31-32.) Arthur and Rita allegedly did so after "succumbing to Weichler's pressure and false promises" that his loans were "superior products" and "good, solid loans." (*Id*. at ¶¶ 32 & 38.) Plaintiffs allege that Weichler sent them "false" and "fraudulent" closing cost and interest estimates for the loans Arthur and Rita took on. (*Id*. at ¶ 33.) These loans ended up being "terrible deal[s]" for the couple and eventually they lost "their luxury condo in Munich, [Germany,] and a beach house in Southern California" and they "were also unable to qualify for more reasonable loan packages because their credit had been damaged." (*Id*. at ¶¶ 33 & 41.)

In addition to brokering these loans, Plaintiffs also allege that after "so ingratiating himself into the Summerfield home," Weichler began secretly meeting with Arthur and "[took] advantage of Arthur's diminished mental capacity" to get Arthur to start day-trading, which led to over $500,000 in losses. (*Id*. at ¶¶ 34, 36 & 50.) Naturally, though, "Weichler was ready with another predatory loan" to cover those losses. (*Id*. at ¶ 36.)

Plaintiffs eventually could not keep entering into loans. Realizing that they were "unable to profit any longer from Rita and Arthur," Defendants terminated Ed in April 2005 as he was no longer useful to them. (*Id*. at ¶37.) Two years later, Ed sued SLC and Weichler in state court and kicked off the events leading up to present.

### LEGAL STANDARD

"Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." FED. R. CIV. P. 12(h)(3). A lack of jurisdiction is presumed unless the party asserting jurisdiction establishes that it exists. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [a federal court's] limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]") (citations omitted); *see also Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) ("A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears.").

On motion, a court may also dismiss a complaint for failure to state a claim. FED. R. CIV. P. 12(b)(6). The federal rules require that a complaint include a "short and plain statement" showing

United States District Court
For the Northern District of California

3

**United States District Court**
For the Northern District of California

1  the plaintiff is entitled to relief.  FED. R. CIV. P. 8(a)(2).  The statement must "raise a right to relief

2  above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 55 (2007).  Yet only

3  plausible claims for relief with survive a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. ___, 129

4  S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).  A claim is plausible if its factual content "allows the

5  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at

6  1949.  A plaintiff does not have to provide detailed facts, but the pleading must include "more than

7  an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 1950.

8          In deciding a motion to dismiss, the court is ordinarily limited to the face of the complaint.

9  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).  The factual

10  allegations pled in the complaint must be taken as true and reasonable inferences drawn from them

11  must be construed in favor of the nonmoving party.  *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336,

12  337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995) (citing *Usher v. City of Los*

13  *Angeles*, 828 F.2d 556, 561 (9th Cir. 1987)).  However, the court cannot assume that "the [plaintiff]

14  can prove facts which [he or she] has not alleged."  *Associated General Contractors of California,*

15  *Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).  "Nor is the court required

16  to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or

17  unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)

18  (citing *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994)), *amended on other*

19  *grounds by* 275 F.3d 1187 (9th Cir. 2001).

20          "A court should freely give leave [to amend] when justice so requires."  FED. R. CIV. P.

21  15(a)(2).  "'Four factors are commonly used to determine the propriety of a motion for leave to

22  amend.  These are: bad faith, undue delay, prejudice to the opposing party, and futility of

23  amendment.'"  *Ditto v. McCurdy*, 510 F.3d 1070, 1079 (9th Cir. 2007) (internal citations omitted).

24  "Futility of amendment can, by itself, justify the denial of a motion for leave to amend."  *Bonin v.*

25  *Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).  An amendment would be "futile" if there is no set of

26  facts can be proved which would constitute a valid claim or defense.  *See Miller v. Rykoff-Sexton,*

27  *Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

28

**United States District Court**
For the Northern District of California

**DISCUSSION**

The RICO statute makes it illegal for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering activity" or to conspire to do so.  18 U.S.C. §§ 1692(c) & (d).  Thus, to state a claim for a violation of this section, a plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985).

"Racketeering activity" is defined as a number of specific criminal acts under federal and state laws.  *See* 18 U.S.C. § 1961(1).  Here, Plaintiffs base their RICO claim on the predicate crimes of mail and wire fraud (18 U.S.C. §§ 1341, 1343).[4]  *See* 18 U.S.C. § 1961(1)(B).  The elements of mail and wire fraud consist of (1) a scheme or artifice devised with (2) the specific intent to defraud and (3) use of the United States mails or interstate wires in furtherance thereof.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 782 (9th Cir. 2002) (citation omitted).  And since Plaintiffs' predicate crimes are based upon allegations of fraud, they must be pled with particularity.  FED. R. CIV. P. 9(b); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553–54 (9th Cir. 2006).

**A. Ed Lacks Standing to Bring a Civil Rico Claim**

"Under RICO's civil enforcement mechanism, '[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] may sue therefor in any appropriate United States district court . . . .'"  *Canyon County v. Syngenta Seeds, Inc.*, 519 F.3d 969, 972 (9th Cir. 2008) (quoting 18 U.S.C. § 1964(c)).  "To have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate

---

[4] Plaintiffs offhandedly attempt to allege other predicate racketeering activity, but these also fail. For instance, while Plaintiffs also allege "extortion" as a predicate crime in Paragraph 49 of the Second Amended Complaint (apparently "by [Weichler] threatening to terminate Ed if he did not assist in obtaining loans from his parents in December 2003 and June 2004"), Plaintiffs do not sufficiently state a claim for extortion under the Hobbs Act, 18 U.S.C. § 1951, or any other state law extortion statute.  In addition, while Plaintiffs allege the predicate crime of "interstate transportation and sale of fraudulently obtained goods" in the same paragraph, Plaintiffs do not cite to any specific predicate crime under RICO.  *See, generally*, 18 U.S.C. § 1961(1).  And lastly, Plaintiffs contend in their opposition to Weichler's Motion that they allege financial institution fraud (18 U.S.C. § 1344) as a predicate crime, but nowhere in the Second Amended Complaint do they actually make this allegation.  (Opp'n at 6-7; *see* SAC, ¶¶ 46-52.)

5

United States District Court
For the Northern District of California

1  causation." *Id.* (citing *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992); *Sedima*, 473

2  U.S. at 496).

3      Where a plaintiff is asserting injury to property, he or she must allege "concrete financial

4  loss." *Id.* at 975 (quoting *Oscar v. Univ. Students Coop. Ass'n.*, 965 F.2d 783, 785 (9th Cir. 1992)

5  (en banc)).  However, "[f]inancial loss alone . . . is insufficient." *Id.*  "'Without a harm to a specific

6  business or property interest — a categorical inquiry typically determined by reference to state law

7  — there is no injury to business or property within the meaning of RICO.'"  *Id.* (quoting *Diaz v.*

8  *Gates*, 420, F3d. 897, 900 (9th Cir. 2005) (en banc)).

9      In this case, Ed's RICO claim as currently pled is based on Plaintiffs' allegation that because

10  Defendants' acts resulted in Arthur and Rita losing large sums of money, Ed's "inheritance

11  eventually was wiped out, as was his ability to borrow from the equity in properties owned by Rita

12  and Arthur."[5]  (SAC, ¶ 33.)  More specifically, Plaintiffs allege that "[t]he properties owned by

13  Plaintiffs [meaning Arthur and Rita] were in a family trust created by Arthur and Rita.  Ed, with his

14  sister, was one of two primary trust beneficiaries and derived income from the trust when, for

15  example, monies were dispersed; thus, he had a present property interest destroyed by Defendants as

16  well as his access to credit secured by these properties."  (*Id.* at ¶ 39.)

17      But as Weichler points out in his opposition — and as counsel for Plaintiffs conceded at oral

18  argument — the trust containing Ed's "inheritance" is revocable.  And under basic principles of trust

---

19  [5] Citing *Mendoza v. Zirkle Fruit Co*., 301 F.3d 1163 (9th Cir. 2002), Plaintiffs argue in their
20  opposition that Ed's injured property interest is his "legal entitlement to business relations
    unhampered by schemes prohibited by the RICO predicate statutes."  *Id.* at 1168 n.4.  The plaintiffs
21  in *Mendoza* were a class of day laborers who alleged that their employers had depressed their wages
    by illegally hiring undocumented workers at below-market wages.  *Id.* at 1166.  The Ninth Circuit
22  determined that the plaintiffs' alleged property interest in the "legal entitlement to business relations
    unhampered by schemes prohibited by the RICO predicate statutes," was sufficient to provide them
23  with standing under RICO.  *Id.* at 1168-1172.  Although Plaintiffs' Second Amended Complaint
    does not mention this purported property interest with respect to Ed's RICO claim, to the extent that
24  Ed bases his RICO claim on harm resulting from his employment and termination from SLC, his
    argument fails.  First, Ed's allegations are distinguishable from the plaintiffs in *Mendoza*, because
25  there, the plaintiffs' alleged that their wages were depressed as a result of the defendants' alleged
    predicate acts of racketing activity (hiring undocumented workers in violation of 8 U.S.C. § 1324).
26  See id at 1168.  Here, however, while Ed's employment and subsequent termination at SLC might
    be considered overt acts that were parts of Defendants' alleged RICO conspiracy, these acts are not
27  predicate acts of racketeering activity under RICO.  And as the Supreme Court has made clear,
    "injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO .
28  . . is not sufficient to give rise to a cause of action under § 1964(c) for a violation of § 1962(d)
    [RICO conspiracy]."  *Beck v. Prupis*, 529 U.S. 494, 505 (2000).

United States District Court
For the Northern District of California

law, since the trust is revocable, Ed's interest in it is, at least up to this point in time,[6] "is 'merely potential' and can 'evaporate in a moment at the whim of the [trustor].'"  *Steinhart v. County of Los Angeles*, 47 Cal.4th 1298, 1319-20 (2010) (quoting *Johnson v. Kotyck* 76 Cal.App.4th 83, 88, 90 (1999); *see also Cal. Prob. Code* § 15800(a) ("Except to the extent that the trust instrument otherwise provides or where the joint action of the settlor and all beneficiaries is required, during the time that a trust is revocable and the person holding the power to revoke the trust is competent . . . [t]he person holding the power to revoke, and not the beneficiary, has the rights afforded beneficiaries under this division.").  With no present interest in the funds contained in the trust, Ed cannot claim that he suffered injury to his "business or property," and so he does not have standing under RICO.

**B.  Arthur and Rita's RICO Claim Also Fails**

Arthur and Rita's RICO claim is also problematic.  In their Second Amended Complaint, they allege that Defendants' plan was to sell them "junk loans."  (SAC, ¶ 15.)  Allegedly, they would enter into these loans because of Weichler's promises of wealth to their son Ed.  (*Id.* at ¶¶ 31-32.)  Indeed, Weichler allegedly met with Arthur and Rita "many times" while Ed was at SLC, and he convinced them to enter into loans in December 2003 and June 2004.  (*Id.* at ¶ 31-33.)  Plaintiffs allege that Defendants faxed them documents that included "fraudulent" estimated closing costs for these loans and misrepresented the loans as "superior products" during telephone calls to them.  (*Id.* at ¶ 33.)  They also allege that Defendants' falsely inflated the values of their assets by forwarding "false" information to lenders about their loans.  (*Id.* at ¶ 40.)  On top of all this, Plaintiffs also allege that Weichler persuaded Arthur to begin day-trading — a hobby that eventually resulted in him losing over $500,000.  (*Id.* at ¶¶ 34, 36 & 50.)

First of all, as for Arthur's day-trading losses, the Court is at a complete loss to understand how his losses were "by reason of" Defendants' alleged predicate acts of mail and wire fraud or their alleged scheme to defraud borrowers and lenders of mortgage loans.  In fact, aside from Weichler introducing Arthur to day-trading, there are no allegations at all which link any of

---

[6] Indeed, Arthur and Rita are very much alive and there is no contention whatsoever that they are incapacitated.

Defendants' conduct to Arthur's losses in the stock markets.  And without such a link, Plaintiffs' lack standing to bring a RICO claim with respect to these losses.

As for the injury suffered by Arthur and Rita as a result of taking out the "junk loans," the Court is unsure whether they suffered harm "by reason of" Defendants' alleged conduct, largely because their claim is so insufficiently pled.

Most notably, Plaintiffs fail to sufficiently allege <u>any</u> predicate acts of racketeering activity. Mail fraud, as one might imagine, requires the use of the mails.  18 U.S.C. § 1341.  Despite the obviousness of this element, Plaintiffs do not allege in their Second Amended Complaint that any mailing ever took place.  For example, Plaintiffs allege that Swensen and Weichler "forwarded false information to lenders about Plaintiffs" in connection with the June 2004 loan, but they make no mention of how this forwarding took place.  (SAC, ¶ 40.)  Without describing with particularity the use of the mails, Plaintiffs do not sufficiently allege mail fraud as a predicate act of "racketeering activity" to support their RICO claim.

Next, wire fraud is an indictable offense under 18 U.S.C. § 1343 only if it involves <u>interstate</u> wire communications.  18 U.S.C. § 1343; *see also Ashland Oil, Inc. v. Arnett,* 875 F.2d 1271, 1276 (7th Cir. 1989).  Plaintiffs fail to allege that any of the wire communications purportedly made in support of Defendants' scheme (*e.g.*, any telephone calls made or faxes sent) were interstate.  (*See* SAC, ¶¶ 33, 38 & 40.)  On the contrary, because the Second Amended Complaint alleges that all parties are located in California, it is reasonable to infer that the alleged fraudulent communications were intrastate.[7]  *See Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 880 F.Supp. 1202, 1212-13 (N.D. Ill. 1995).  Thus, like their mail fraud allegations, Plaintiffs do not sufficiently allege wire fraud as a predicate act of "racketeering activity" to support their RICO claim.

But even if Plaintiffs had alleged mailings or interstate wirings, their claim would still fail because it is not pled with particularity (as it must be when they base their claim on predicate acts of mail and wire fraud).  Quite simply, they never explain what the fraudulent statements or omissions were.  For example, Plaintiffs describe the loans they entered into as "junk loans," "junk

---

[7] Indeed, Plaintiffs even state that Defendants sent a fax to a lender in Emerald Hills, California, which is obviously an <u>intrastate</u> wiring.  (SAC, ¶ 40.)

United States District Court
For the Northern District of California

mortgages," or "predatory loans" which were "terrible deals," but these are conclusions, not facts. (SAC, ¶¶15, 33, 35-36.) They say that they later found out "the true nature of the predatory and fraudulent loan products they had been sold," but they do not explain what this means. (*Id.* at ¶ 38.) They say that Weichler told them the loans were "superior products," but they do not say how they were not. (*Id.* at ¶¶ 32 & 38.) They say that Defendants sent them fraudulent estimated closing costs on their loans, but they do not say what they were or why they were fraudulent. (*Id.* at ¶ 33.) Despite all of the inflammatory allegations, the Court still does not know what the supposed fraudulent conduct was. And, without knowing what the fraudulent conduct was, the Court cannot understand how Arthur and Rita's "business or property" may have been harmed "by reason of" Defendants' conduct so as to provide them with standing to bring a RICO claim.

**C. The Court Will Not Exercise Supplemental Jurisdiction over Plaintiffs' State Claims**

Plaintiffs' Second Amended Complaint also includes several state claims, including those that allege various California Labor Code violations. The Court declines to exercise supplemental jurisdiction over these claims unless and until Plaintiffs adequately plead a federal claim.

**CONCLUSION**

Based on the foregoing:

1. Weichler's motion to dismiss Plaintiffs' RICO claim is granted with leave to amend;

2. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims; and

3. Plaintiffs may file an amended complaint without fourteen days of this order.

**IT IS SO ORDERED.**

Dated: September 20, 2010

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

9

**C 09-02609 HRL Notice will be electronically mailed to:**

Jonathan Harold Miller          jhmillerlaw@gmail.com
Russell Alan Robinson           rarcases@yahoo.com, lawrs@ymail.com
Vincent J. Kilduff              kildufflaw@aol.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**