Russell A. Robinson, 163937
Law Office of Russell A. Robinson
345 Grove Street, First Floor
San Francisco CA 94102
TEL: 415.255.0462
FAX: 415.431.4526

Counsel for Plaintiffs
ED SUMMERFIELD, ARTHUR
SUMMERFIELD, and RITA SUMMERFIELD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ED SUMMERFIELD, ARTHUR SUMMERFIELD, and RITA SUMMERFIELD, <br><br> Plaintiffs, <br><br> v. <br><br> ALI WEICHLER, ET AL., <br><br> Defendants. | No. C-09-2609-HRL <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT ALI WEICHLER'S MOTION TO DISMISS** <br> [Jury Trial Demanded] <br><br> Date: November 23, 2010 <br> Time: 10:00 a.m. <br> Courtroom: 2 |

**I.   INTRODUCTION**

This action commenced June 12, 2009. After the initial complaint was dismissed with leave to amend and the First Amended Complaint filed, this Court granted Plaintiffs leave to amend and to file a Second Amended Complaint and a Third Amended Complaint (TAC); the TAC is the operative complaint.

Defendant Eric Swenson sought bankruptcy protection, Chapter 7; his obligations have been discharged. Defendant Leo Agustin has been defaulted. Defendant Strategic Lending has been dismissed. Defendant Ali Weichler alone moves to dismiss the TAC under Federal Rules of Civil Procedure (FRCP), Rules 12(b)(1) and 12(b)(6).

In a somewhat repetitive and rambling motion, Weichler essentially argues that the TAC – with entire action – should be dismissed without leave to amend because, *inter alia*, Plaintiffs

1  lack standing, the TAC fails to establish "racketeering activity," predicate and fraudulent acts are
2  not alleged with sufficient particularity, and the RICO claims are barred by the applicable four-
3  year-statute of limitations, and Ed Summerfield's claims.
4      Plaintiffs oppose the motion to dismiss without leave to amend, as addressed below.  The
5  TAC added new and additional facts, the significance of which is not addressed by Weichler.
6  Plaintiffs claims are not barred and each Plaintiff has standing.

7  **II.   BACKGROUND**

8      In 2002, Plaintiff Rita Summerfield friend, Gisela, introduced Rita to Gisela's son,
9  Defendant Weichler.  Through this connection, Weichler learned that Rita and her husband,
10 Arthur Summerfield owned a home in Sunnyvale, several condominiums in the South Bay, a
11 beach house in Southern California, and a luxury penthouse in Munich, Germany, with a grand
12 view of the Oktoberfest fair grounds.
13     Through this social connection, Weichler also learned most of these properties were
14 owned outright by the Summerfields.  Weichler, who exercised control and ownership over
15 Defendant Strategic Lending Corporation, saw an opportunity to capitalize on the Summerfields
16 and their equity.  He thus offered a job to Ed Summerfield, the son of Rita and Arthur.
17     As alleged in the TAC, a critical event in the conspiracy to defraud the plaintiffs occurred
18 when Ed Summerfield was hired by Weichler and Strategic.   But for the false promises made to
19 Ed, Weichler and Strategic would not have been able to destroy the Summerfields' savings and
20 equity through a pattern of racketeering.
21     Initially, as an inducement to Ed, Weichler promised Ed untold riches and upwards of
22 $1,000,000 annual salary if Ed would come to work at Strategic and learn the business from
23 Weichler.  Weichler maintained his hold on Ed for about two years through repeated promises of
24 riches and education in the industry.
25     Weichler and Strategic never delivered on their promises to Ed.
26     Instead, Weichler harassed and harangued Ed, Rita, and Arthur into several refinances,
27 after he started Arthur day-trading.  Using promises to Ed as bait, Weichler eventually convinced
28

*Summerfield, et al., v. Weichler, et al.* (No. C-09-2609-HRL)
PLAINTIFFS' OPPOSITION TO DEFENDANT
ALI WEICHLER'S MOTION TO DISMISS                    - 2 -

1  Rita and Arthur to refinance their home through Strategic.  At the time of this transaction in
2  2004, Rita and Arthur were one year from paying off the mortgage on this property.
3  Nonetheless, succumbing to Weichler's promises the loan was a "superior product" and other,
4  more specific promises and representations, and that he would make Ed rich, Rita and Arthur
5  signed on the proverbial dotted line.
6      The loan Weichler and Strategic sold the Summerfields was hugely profitable for the
7  defendants.  Unfortunately, that loan was a terrible deal for the Summerfields.
8      Weichler had, by this time, so ingratiated himself into the Summerfield home that he was
9  secretly meeting with Arthur.  Arthur, born January 1, 1931, previously suffered a debilitating
10 injury at work and was, at the time of these dealings with Weichler, undergoing treatment for
11 cancer.  Weichler started Arthur day-trading.
12     In the course of day-trading, Arthur – who at all relevant times acted at direction of
13 Weichler – lost over $500,000  The online brokerage firm exercised its right and made a margin
14 call on Arthur.  Having not worked since 1992 because of his injuries, Arthur needed to borrow
15 money.  To meet Arthur's needs, Weichler was ready with another predatory loan.
16     Throughout 2004 and into April 2005, Weichler, exercising control over Strategic,
17 preyed upon Plaintiffs.  Then, the Summerfields stopped buying Strategic loans.  They were
18 unable to keep borrowing.  Swensen, Agustin, and Weichler, unable to profit any longer from
19 Rita and Arthur – and having not made good on their promises to Ed – terminated Ed in late
20 April 2005 and then cowed him into walking away through false threats. [TAC]
21     After Ed was terminated, Weichler continued to re-assure Rita and Arthur, fraudulently,
22 that the loans he and Strategic had sold were good, solid loans.  These fraudulent reassurances,
23 via telephone and using the aforementioned personal connection of Weichler's mother, Gisela,
24 kept Plaintiffs ignorant of the true nature of the predatory and fraudulent loan products they had
25 been sold until about August 16, 2005. [TAC]
26     As part of the racketeering pattern engaged in by Defendants, they submitted false loan
27 documents and applications on behalf other borrowers.  Plaintiffs plead in the TAC with
28

1 specificity how these fraudulent submissions were made, what the fraudulent submissions were,
2 and when each was made. [TAC]
3     Ed, who had never been paid what he was promised and had not received legitimate
4 wages while at Strategic, filed a claim with the California Labor Commissioner, and followed
5 with the state court action mentioned in the moving papers. Ed caused that case to be dismissed,
6 without prejudice, in June 2009. Plaintiffs filed this federal court action the same date upon
7 which that state court action was dismissed.
8     Defendant Weichler moves for dismissal under Federal Rules of Civil procedure, Rules
9 12(b)(1) and 12(b)(6). Plaintiffs oppose dismissal. The Court should deny the motion.
10 However, should the Court grant all or part of the motion, Plaintiffs pray leave to amend. Any
11 defects may be easily cured through an initial amendment.

12 **II.     ARGUMENT**

13     Under FRCP, Rule 8(a), Plaintiffs' must provide "fair notice of what the claims are and
14 the grounds upon which they rest." *See, Swierkiewicz v. Sorema NA*, (2002) 534 US 506, 514.
15 A motion under Rule 12(b)(1) challenges the Court's subject matter jurisdiction while a motion
16 to dismiss under Rule 12(b)(6) focuses on the Complaint's legal sufficiency. Dismissal is proper
17 only where the facts alleged fail to state any claim upon which relief may be granted. All well
18 pled facts in the complaint must be taken as true and all reasonable inferences that may be drawn
19 from those facts must be in Plaintiff's favor. *See, e.g., Quality Mercury, Inc. v. Ford Motor Co.,*
20 542 F.2d 466, 468-469 (8th Cir. 1976).
21     Defendants attack the Civil RICO claim on several grounds. These are as follows:
22     1.    Plaintiffs lack standing to bring a Civil RICO claim;
23     2.    The Complaint fails to establish "racketeering activity";
24     3.    Plaintiffs have failed to allege predicate acts and have failed to show proximate
25         cause of injury;
26     4.    Allegations of fraud and mistake must be pled with particularity; and,
27     5.    Plaintiffs' RICO claims are barred by the four-year statute of limitations.
28

*Summerfield, et al., v. Weichler, et al.* (No. C-09-2609-HRL)
PLAINTIFFS' OPPOSITION TO DEFENDANT
ALI WEICHLER'S MOTION TO DISMISS    - 4 -

1 Plaintiffs disagree with these arguments, as set forth below. However, if the Court grants

2 the motion to dismiss, Plaintiffs can cure these defects and should be granted leave to amend.

3 The elements of a civil RICO claim are as follows:

4 (1) conduct

5 (2) of an enterprise

6 (3) through a pattern

7 (4) of racketeering activity ("predicate acts")

8 (5) causing injury to plaintiff's "business or property." *Grimmett v. Brown,* 75 F.3d
9       506, 510 (9th Cir. 1996); citing 18 USC §§ 1964( c), 1962( c).

10 There is one enterprise targeted by Plaintiffs under RICO. The subject enterprise is

11 Strategic Lending Corporation. Under 18 USC section 1961(4), a corporation "or group of

12 individuals" may be considered an enterprise for purposes of RICO.

13 **A.    Plaintiffs do not lack standing.**

14 Plaintiffs do not lack standing to bring the Civil RICO Claim. Plaintiffs were injured in

15 their property. Clearly, Rita and Arthur were directly damaged by the fraudulent loans and other

16 conduct of the defendants. Ed's damage, to his inheritance and his credit score, were caused by

17 the fraudulent activity of the defendants.

18 In considering the Court of Appeals' second prerequisite for a private civil RICO action
injury – "injury . . . caused by an activity which RICO was designed to deter" – we are
19 somewhat hampered by the vagueness of that concept. Apart from reliance on the
general purposes of RICO and a reference to "mobsters," the court provided scant
20 indication of what the requirement of racketeering injury means. *Sedima, SPRL v. Imrex Co.* (1985) 105 Sct 3275, 3284.

21

22 Section 1964( c) authorizes a private suit by "[a]ny person injured in his business or
property by reason of a violation of §1962." Section 1962 in turn makes it unlawful for
23 "any person" – not just mobsters – to use money derived from a pattern of racketeering
activity, . . . to conduct an enterprise through a pattern of racketeering activity. §§
24 1962(a)-( c). If the defendant engages in a pattern of racketeering activity in a manner
forbidden by these provisions, and the racketeering activities injure the plaintiff in his
business or property, the plaintiff has a claim under §1964( c). *Sedima, SPRL v. Imrex*
25 *Co.* (1985) 105 Sct 3275, 3285.

26 Defendants' conduct must be a proximate cause of Plaintiffs' alleged injuries. *See*

27 *Holmes v. Sec. Investor Prot. Corp.,* (1992) 503 U.S. 258, 268. In a RICO case, proximate cause

28

*Summerfield, et al., v. Weichler, et al.* (No. C-09-2609-HRL)
PLAINTIFFS' OPPOSITION TO DEFENDANT
ALI WEICHLER'S MOTION TO DISMISS     - 5 -

1    is shown when "the wrongful conduct [is] a substantial and foreseeable cause" of the injury and

2    the relationship between the wrongful conduct and the injury is "logical and not speculative."

3    *See Trollinger v. Tyson Foods, Inc.,* (6th Cir. 2004) 370 F.3d 602, 615.

4        Moving party is not claiming that Rita was not injured. Despite his marriage to Rita,

5    moving party claims Arthur cannot show proximate cause. As shown above, Arthur can show

6    his losses were proximately caused by the defendants. After all California was and remains a

7    community property state.

8        So, too, Ed suffered losses. These losses were proximately caused by Defendants. Ed

9    can allege and prove an injury to his property interest, the "legal entitlement to business relations

10   unhampered by schemes prohibited by the RICO predicate statutes." *Mendoza v. Zirkle Fruit*

11   *Co.,* (9th Cir 2002) 301 F.3d 1163, 1168 n. 4. The Ninth Circuit has held this property interest

12   sufficient to provide standing under RICO. *Id.* at 1168. Ed has alleged and can further allege

13   such an interference with business relations.[1]

14       **B.**    **The Complaint Establishes "Racketeering Activity."**

15/16/17   It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt. 18 USC §1962( c).

18   To establish liability under §1962( c), one must allege and prove the existence of two

19   distinct entities:

20       (1)    a "person"; and,

21/22/23       (2)    an "enterprise" that is not simply the same "person" referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 161, 121 S.Ct. 2087 (2001); *see, also Rae v. Union Bank,* 725 F.2d 478, 481 (9th Cir. 1984).

24   Moving party ignores the expansive definition of "racketeering" in the relevant section.

---

[1] Ed's RICO claims are not the same as his dismissed state law claims. But for Ed's hire by Weichler, Weichler would not have been able to use Ed to defraud Ed's parents. While Ed may have understood that Weichler was defrauding other borrowers and lenders alike, the TAC does not contain any facts by which one may infer that Ed knew his parents were defrauded through racketeering before August 16, 2005.

*Summerfield, et al., v. Weichler, et al.* (No. C-09-2609-HRL)
PLAINTIFFS' OPPOSITION TO DEFENDANT
ALI WEICHLER'S MOTION TO DISMISS    - 6 -

1  That section includes mail fraud (18 USC §1341), wire fraud (18 USC §1343), and, financial
2  institution fraud (18 USC §1344). All of these are alleged in the Complaint, and Plaintiffs can
3  allege specific activity of racketeering.

4  For example, racketeering by defendants included mail and wire fraud arising from the
5  inflated and fraudulent loans and mis-representations made to Plaintiffs in connection with the
6  loans, the efforts to have Ed falsify loan documents, loan documents falsified by Defendants, and
7  the false promises made to induce Ed to work at Strategic. That one or more of these individual
8  defendants continues to act as a mortgage broker (Swensen) is a continued threat of criminal
9  activity. 18 USC §§ 1961(5) and 1962.

### C. Plaintiffs have alleged predicate acts and can show proximate cause of injury.

12  This argument by moving party duplicates the arguments advanced in points 1 and 2
13  above. Plaintiffs have alleged provide specific dates of acts of wire fraud, mail fraud, and
14  financial institution fraud committed by these defendants through August 16, 2005.

15  One problem in addressing arguments advanced by Weichler is that, while he cites cases
16  with aplomb and lists elements with detail, he does not analyze the facts in the TAC in view of
17  the relevant authorities. For example, Weichler contends the allegations of fraud must be pled
18  with particularity, but ignores the very specific fact pled on August 16, 2005, by telephone; Rita
19  had sought assurances from Weichler about the final loan secured by the plaintiffs' residence and
20  Weichler falsely re-assured Rita that the loan was a "superior loan".

21  There are instances of particular, predicate acts in the TAC. The TAC describes, for
22  example, facsimile transmissions (wire) and telephone averments by Weichler on May 19, 20,
23  22, 22 (again), 29, and finally on June 23, 2004, across state lines. These predicate acts caused
24  Plaintiffs to proceed with the subject loans and ultimately damaged Plaintiffs – as alleged.

### D. Plaintiffs' RICO claims are *not* barred by the four-year statute of limitations.

26  Plaintiffs has provided specific dates of acts of wire fraud, mail fraud, and financial
27  institution fraud committed by these defendants through August 16, 2005. Each overt act in

1  furtherance of the conspiracy – part of the violation – starts the statutory period running again,
2  "regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." *Klehr v.*
3  *AO Smith Corp.* (1997) 521 US 179, 117 S.Ct. 1984, 1990-1991.[2]

4  Moreover, "federal equitable tolling doctrines apply" to RICO claims. *Enrich v. Touche*
5  *Ross & Co.,* (9th Cir. 1988) 846 F.2d 1190, 1199.  Plainitffs, for example, plead with specificity
6  in TAC that Weichler intentionally misled Rita.  This allegation established fraudulent
7  concealment.

8  **E.    Conspiracy.**

9  RICO conspiracy is governed by traditional concepts of conspiracy law.  A "conspiracy
10 to violate RICO should not require anything beyond that required for a conspiracy to violate any
11 other crimes."  *United States v. Neapolitan,* 791 F.2d 489, 497 (7th Cir. 1986).  The drafters of
12 section 1962(d) intended to target, like all provisions prohibiting conspiracies, the agreement to
13 violate RICO's substantive provisions, not the actual violations themselves.  *See, United States*
14 *v. Glecier,* 923 F.2d 496, 500 (7th Cir. 1990), *cert. denied,* 112 S.Ct. 54 (1991); *United States v.*
15 *Angiulo,* 847 F.2d 956, 964 (1st Cir. 1987), *cert. denied,* 488 U.S. 852, 109 S.Ct. 138, and *cert.*
16 *denied,* 488 U.S. 928, 109 S.Ct. 314 (1988).

17 Thus, while a conspiracy to violate RICO requires an agreement to commit a pattern of
18 predicate acts, it does not require that any predicate acts actually be committed.[3] *United States v.*
19 *Phillips,* 664 F.2d 971, 1038 (5th Cir. 1981), *cert. denied.*

20 It is true that an agreement to violate RICO, standing alone, cannot harm anybody.  Some
21 act in furtherance of that agreement (an "overt act") is necessary.  However, because RICO
22 conspiracy does not require commission of a predicate act, the act causing Plaintiffs' injuries
23 need not be a predicate act of racketeering.  A person directly injured by an overt act in

---

25  [2]   A "new predicate act" more than four years after the last such act would not revive
26 dead claims, however. *Id.*  Of course, this is not the case at bar where all the acts are alleged to have happened in the 2003-2005 period.

28  [3]   Of course, here Plaintiffs alleged several predicate acts by each defendant.

*Summerfield, et al., v. Weichler, et al.* (No. C-09-2609-HRL)
PLAINTIFFS' OPPOSITION TO DEFENDANT
ALI WEICHLER'S MOTION TO DISMISS          - 8 -

1 furtherance of a RICO conspiracy has been injured "by reason of" the conspiracy.

2     A conspiracy to violate RICO's substantive provisions is itself a violation of RICO. 18

3 USC §1962(d). A person injured "by reason of" the conspiracy has been injured "by reason of"

4 the RICO violation. That is all that § 1964© requires for standing to bring a civil RICO action.

5     Thus, the Complaint contains adequate factual allegations to support a cause of action for

6 RICO violations against these defendants, based on the above.

7 **III.    CONCLUSION**

8     The joint motion should be denied. If granted in whole or in part, Plaintiffs should be

9 granted leave to amend at least one more time. Leave "shall be freely given when justice so

10 requires," as it does here, in this case, with these facts.

12 Date: November 2, 2010         /s/ Russell A. Robinson
Law Office of Russell A. Robinson
13                                     By:    Russell A. Robinson
Counsel for Plaintiffs
14                                    ED SUMMERFIELD, ARTHUR SUMMERFIELD, and
RITA SUMMERFIELD

*Summerfield, et al., v. Weichler, et al.* (No. C-09-2609-HRL)
PLAINTIFFS' OPPOSITION TO DEFENDANT
ALI WEICHLER'S MOTION TO DISMISS       - 9 -