**\*\* E-filed March 8, 2011 \*\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ED SUMMERFIELD, et al., | No. C09-02609 HRL |
| Plaintiffs, | **ORDER GRANTING DEFENDANT ALI WEICHLER'S MOTION TO DISMISS** |
| v. | |
| STRATEGIC LENDING CORPORATION, et al., | **[Re: Docket No. 87]** |
| Defendants. | |

## BACKGROUND

This action originally arose out of plaintiff Ed Summerfield's ("Ed") former employment with Strategic Lending Corporation ("SLC"). In April 2007, Ed sued SLC, his former boss, Ali Weichler ("Weichler"), and Weichler's purported partners at SLC, Leo Agustin ("Agustin") and Eric Swensen ("Swensen") (collectively, "Defendants") in California state court for violations of the California Labor Code and the common law. On June 12, 2009, Ed voluntarily dismissed his state court action and filed a complaint in federal court. The federal suit added two new plaintiffs: Arthur Summerfield ("Arthur") and Rita Summerfield ("Rita"), Ed's parents. It also added a federal claim for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68.[1]

---

[1] SLC has not been served with any federal complaint or summons. Agustin, who was served in April 2010, never responded to or answered the complaint, and his default was entered. Swensen eventually filed for bankruptcy and claims against him are subject to an automatic stay.

In their Third Amended Complaint, Ed, Arthur, and Rita (collectively, "Plaintiffs") allege only one claim for relief: civil RICO. Docket No. 86 ("TAC"). They allege that "Weichler planned to induce Ed to work for SLC so that Weichler could "sell junk loans" (mortgages) to Ed's equity-rich parents." Id. ¶ 15. To that end, they allege that Weichler induced Ed to join SLC in May 2003 with a "guarantee" that Ed would be making at least one million dollars a year within four years. Id. ¶¶ 14, 17. Ed claims that he took the job in reliance on Weichler's promises, but that things did not go as planned. Indeed, the Third Amended Complaint provides a lengthy list of the various wrongs that Weichler allegedly committed against Ed during Ed's employment, all of which eventually culminated in Ed's termination on April 29, 2005. Id. ¶¶ 16-30.

In addition to the allegations surrounding Ed's employment, Plaintiffs also allege that Weichler harmed Arthur and Rita. "[U]sing promises to Ed as bait," Plaintiffs allege that Weichler "met with Rita and Arthur many times" while Ed worked for SLC and convinced them "to re-finance their home, to take a line of equity [against their home], and to borrow heavily on other property, all to the benefit and unlawful gain of the Defendants." Id. ¶¶ 31-32. Arthur and Rita allegedly did so after "[s]uccumbing to Weichler's pressure and false promises" that his loans were "superior product[s]." Id. ¶ 38.

Arthur and Rita entered into three loans: one in late 2003 or early 2004 and two in June 2004. Id. ¶ 38, 42-43. They allege that Weichler sent them "false" closing cost and interest estimates for the loans. Id. ¶¶ 39, 43. For example, they allege that one loan "had hidden fees in excess of $12,000," which "was not disclosed by Defendants to Plaintiffs on the estimated closing costs . . . ." Id. ¶ 39. These loans ended up being "terrible deal[s]" for the couple and eventually they lost "their luxury condo in Munich, [Germany,] and a beach house in Southern California" and "were also unable to qualify for more reasonable loan packages because their credit had been damaged." Id. ¶¶ 40, 50.

In addition to the loans, Plaintiffs also allege that "at Weichler's urging and with Weicher's guidance," Arthur began day-trading at the end of 2003. Id. ¶ 36. Weicher met with Arthur "[i]n secret and behind a closed door" and "frequently pulled Arthur aside and talked to Arthur about day-

<div style="text-align: left; font-style: italic;">United States District Court<br>For the Northern District of California</div>

1  trading stocks, promising to steer Arthur to solid buys and great investments." Id. ¶¶ 32, 37. It turns
2  out, though, that Arthur lost $500,000 through these activities. Id. ¶ 37. And once that happened,
3  Arthur and Rita needed to borrow money, and Weichler was there, ready with loans for them. Id.

4  Weichler now moves for an order dismissing Plaintiffs' Third Amended Complaint pursuant
5  to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6) on the grounds that Ed lacks
6  standing to bring his civil RICO claim and that Arthur and Rita fail to state a claim upon which
7  relief can be granted. Docket No. 87 ("MTD"); Docket No. 88 ("Memo"). Plaintiffs filed an
8  opposition brief, which is virtually identical to their unsuccessful opposition brief for the previous
9  motion to dismiss. Docket No. 90 ("Opp'n"). Oral argument was heard on November 23, 2010.

## LEGAL STANDARD

"Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." FED. R. CIV. P. 12(h)(3). A lack of jurisdiction is presumed unless the party asserting jurisdiction establishes that it exists. See Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [a federal court's] limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]") (citations omitted); see also Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989) ("A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears.").

On motion, a court may also dismiss a complaint for failure to state a claim. FED. R. CIV. P. 12(b)(6). The federal rules require that a complaint include a "short and plain statement" showing the plaintiff is entitled to relief. FED. R. CIV. P. 8(a)(2). The statement must "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 55 (2007). Yet only plausible claims for relief with survive a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009). A claim is plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 1950.

In deciding a motion to dismiss, the court is ordinarily limited to the face of the complaint. Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). The factual allegations pled in the complaint must be taken as true and reasonable inferences drawn from them must be construed in favor of the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996); Mier v. Owens, 57 F.3d 747, 750 (9th Cir. 1995) (citing Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987)). However, the court cannot assume that "the [plaintiff] can prove facts which [he or she] has not alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (citing Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994), amended on other grounds by 275 F.3d 1187 (9th Cir. 2001)).

"A court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). "'Four factors are commonly used to determine the propriety of a motion for leave to amend. These are: bad faith, undue delay, prejudice to the opposing party, and futility of amendment.'" Ditto v. McCurdy, 510 F.3d 1070, 1079 (9th Cir. 2007) (internal citations omitted). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995). An amendment would be "futile" if there is no set of facts can be proved which would constitute a valid claim or defense. See Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988).

**DISCUSSION**

A. Ed Lacks Standing to Bring a Civil RICO Claim

This Court previously addressed Ed's standing to bring this civil RICO claim in its order dismissing Plaintiffs' Second Amended Complaint. Docket No. 85. Specifically, this Court explained:

> Under RICO's civil enforcement mechanism, "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] may sue therefor in any appropriate United States district court . . . ." Canyon County v. Syngenta Seeds, Inc., 519 F.3d 969, 972 (9th Cir. 2008) (quoting 18 U.S.C. § 1964(c)). "To have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the

Case5:09-cv-02609-HRL Document99 Filed03/08/11 Page5 of 9

> RICO violation, which requires the plaintiff to establish proximate causation." Id. (citing Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992); Sedima, 473 U.S. at 496).
>
> Where a plaintiff is asserting injury to property, he or she must allege "concrete financial loss." Id. at 975 (quoting Oscar v. Univ. Students Coop. Ass'n., 965 F.2d 783, 785 (9th Cir. 1992) (en banc)). However, "[f]inancial loss alone . . . is insufficient." Id. "'Without a harm to a specific business or property interest — a categorical inquiry typically determined by reference to state law — there is no injury to business or property within the meaning of RICO.'" Id. (quoting Diaz v. Gates, 420, F3d. 897, 900 (9th Cir. 2005) (en banc)).

Id. at 5-6.

This Court concluded that Ed did not have standing because his RICO claim was based on the allegation that Defendants caused Arthur and Rita to lose large sums of money, and so Ed's "inheritance eventually was wiped out, as was his ability to borrow from the equity in properties owned by Rita and Arthur." Docket No. 68 ("Second Amended Complaint" or "SAC") ¶ 33.

The problem with Ed's claim was that — as counsel for Plaintiffs conceded at oral argument on August 31 — the trust containing Ed's "inheritance" is revocable. And under basic principles of trust law, since the trust is revocable, Ed's interest in it "is 'merely potential' and can 'evaporate in a moment at the whim of the [trustor].'" Steinhart v. County of Los Angeles, 47 Cal.4th 1298, 1319-20 (2010) (quoting Johnson v. Kotyck, 76 Cal.App.4th 83, 88, 90 (1999)); see also Cal. Prob. Code § 15800(a) ("Except to the extent that the trust instrument otherwise provides or where the joint action of the settlor and all beneficiaries is required, during the time that a trust is revocable and the person holding the power to revoke the trust is competent . . . [t]he person holding the power to revoke, and not the beneficiary, has the rights afforded beneficiaries under this division.").

Plaintiffs' Third Amended Complaint does nothing to cure the problem. It contains the same allegation that, because Defendants' acts resulted in Arthur and Rita losing large sums of money, Ed's "inheritance eventually was wiped out, as was his ability to borrow from the equity in properties owned by Rita and Arthur." TAC ¶ 43. In an apparent attempt to allege sufficient facts to establish Ed's standing, Plaintiffs did add an allegation, but it merely restates the basic allegation that Ed used to be able to receive and/or borrow money from his parents, but he no longer can. Id. ¶ 44. But with no present interest in the funds contained in the trust, Ed cannot claim that he suffered injury to his "business or property," and so he does not have standing under RICO. And, since the

1 Court specifically outlined the problems with Plaintiffs' allegations in its previous order, and
2 Plaintiffs failed to address them in any meaningful way, the Court believes that further amendment
3 would be futile. Therefore, Ed's civil RICO claim will be dismissed with prejudice.

    B. <u>Arthur and Rita's Civil RICO Claim Also Fails</u>

The RICO statute makes it illegal for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering activity" or to conspire to do so. 18 U.S.C. §§ 1692(c) & (d). Thus, to state a claim for a violation of this section, a plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 497 (1985).

"Racketeering activity" is defined as a number of specific criminal acts under federal and state laws. 18 U.S.C. § 1961(1). Here, Plaintiffs base their RICO claim on the predicate crimes of mail and wire fraud (18 U.S.C. §§ 1341, 1343).[2] The elements of mail and wire fraud consist of (1) a scheme or artifice devised with (2) the specific intent to defraud and (3) use of the United States mails or interstate wires in furtherance thereof. <u>Orr v. Bank of America, NT & SA</u>, 285 F.3d 764, 782 (9th Cir. 2002) (citation omitted). And since Plaintiffs' predicate crimes are based upon allegations of fraud, they must be pled with particularity. FED. R. CIV. P. 9(b); <u>Odom v. Microsoft Corp.</u>, 486 F.3d 541, 553–54 (9th Cir. 2006).

    1. <u>Mail Fraud</u>

Plaintiffs did not allege a single mailing in the Second Amended Complaint, so in their Third Amended Complaint they allege that Ed received a termination letter in the mail on April 29, 2005. TAC ¶ 30. This letter allegedly "threatened that if Ed sued SLC or anybody connected with SLC, Ed

---

[2] As they did in their Second Amended Complaint, Plaintiffs offhandedly attempt to allege other predicate racketeering activity, but their attempt fails. For instance, while Plaintiffs also allege "extortion" as a predicate crime in Paragraph 58 of the Third Amended Complaint (apparently by Weichler "threatening to terminate Ed if he did not assist in obtaining loans from his parents in December 2003 and June 2004" and "falsely claiming in a April 29, 2005 letter to Ed that it was Ed who would be prosecuted if Ed complained or failed any action"), Plaintiffs do not sufficiently state a claim for extortion under the Hobbs Act, 18 U.S.C. § 1951, or any other state law extortion statute. Plaintiffs also allege the predicate crime of "financial institution fraud" (presumably, 18 U.S.C. § 1344), but there are virtually no allegations as to this claim. In addition, while Plaintiffs also allege a predicate crime of "interstate transportation and sale of fraudulently obtained goods," Plaintiffs do not cite to any specific predicate crime under RICO. See generally, 18 U.S.C. § 1961(1).

1 would suffer terrible consequences" and "falsely claimed [that] Ed had no right to compensated, 2 engaged in defamation of Weichler by describing real events at SLC, and that if Ed did anything to 3 seek redress, Ed would be prosecuted." Id. Plaintiffs do not, however, state who the letter is from or 4 how the claim that Ed had no right to be compensated was false. Furthermore, there is no apparent 5 connection between this letter to Ed and a possible RICO claim of Arthur and Rita. Accordingly, 6 this allegation does not meet the "particularity requirement" for fraud claims. FED. R. CIV. P. 9(b); 7 Odom v. Microsoft Corp., 486 F.3d 541, 553–54 (9th Cir. 2006).

    2. Wire Fraud

Wire fraud requires the interstate use of the wires. In their Second Amended Complaint, Plaintiffs alleged that Swensen and Weichler "forwarded false information to lenders about Plaintiffs" in connection with the June 2004 loan, but they made no mention of how this forwarding took place. SAC ¶ 40. To correct this insufficiency, Plaintiffs' allege in their Third Amended Complaint that Swensen and Weichler faxed false information "to lenders (and their underwriters in Nevada)" about Plaintiffs' loan (e.g., Defendants falsely inflated the values of Plaintiffs' assets). TAC ¶ 47. Plaintiffs also allege that Swensen and Weichler sent faxes to "lenders and underwriters" in three dates in December 2004 and January 2005 which contained false information about loans involving other individuals. Id. ¶ 48.

Plaintiffs' allegations are again too vague. First, as for the Plaintiffs' information, the Court cannot tell whether Defendants faxed the false information to these Nevada underwriters or only expected that the Nevada underwriters would have access to it. Id. ¶ 47. Indeed, as Weichler points out in his reply brief, the allegation "implies that the lenders forwarded whatever information they determined to their underwriters," rather than explicitly states that Defendants sent faxes to Nevada. Docket No. 91 ("Reply") at 4. And as for other individuals' information, the allegation does not allege where the underwriters are located. Id. ¶ 48. Second, Plaintiffs fail to identify these underwriters (aside from saying that they are in Nevada). It is well-established that allegations of fraud must be stated with "specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" Swartz

7

v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (quoting Edwards v. Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004)). Plaintiffs' allegations do not meet this standard.

Plaintiffs also allege an interstate telephone call between Rita and Weichler in June 2005, during which Rita asked Weichler "why the interest rates and monthly payments were rising when Weichler had repeatedly promised that these would not rise." TAC ¶ 45. They allege that although "Weichler falsely told Rita that the 'bank had made an error' and that he would correct the problem with the bank," he "knew that this was not a bank error, but rather [was] a hidden cost of the loan which he had not disclosed to the plaintiffs at the time he sold them this loan." Id.

This is also a closer call. On one hand, Plaintiffs are clear as to the parties to and the content of the call. On the other hand, it is unclear how this alleged misrepresentation furthered Plaintiffs' scheme since, by June 2005, Arthur and Rita had already entered into the loans at issue. But even if this wire fraud claim has been sufficiently pled, Plaintiffs will have alleged only a single instance of a predicate crime, and a civil RICO claim requires multiple instances to constitute a "pattern" of racketeering activity. Sedima, 473 U.S. at 497.

\* \* \*

Plaintiffs have failed, for a third time, to sufficiently allege a civil RICO claim. After this many failed attempts, the Court believes that further amendment will be futile. Therefore, Plaintiffs' civil RICO claim against Weichler is dismissed with prejudice.[3]

## CONCLUSION

Based on the foregoing, the Court GRANTS Weichler's motion to dismiss. Plaintiffs' Third Amended Complaint against Weichler is DISMISSED WITH PREJUDICE.[4]

**IT IS SO ORDERED.**

Dated: March 7, 2011

HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

---

[3] Because the Court dismisses Plaintiffs' civil RICO claim against Weichler as insufficient, the Court need not address Weichler's statute of limitations argument.

[4] Plaintiffs should advise the Court of their intentions with respect to defendants Agustin and Swensen.

8

**C09-02609 HRL Notice will be electronically mailed to:**

| | |
|---|---|
| Jonathan Harold Miller | jhmillerlaw@gmail.com |
| Russell Alan Robinson | rarcases@yahoo.com, lawrs@ymail.com |
| Vincent J. Kilduff | kildufflaw@aol.com |

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**