*E-FILED: June 21, 2013*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ED SUMMERFIELD, et al., | No. C09-02609 HRL |
| Plaintiffs, | **ORDER DENYING MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| STRATEGIC LENDING CORP., et al., | **(Dkts. 129, 132)** |
| Defendants. | |

In April 2007 Ed Summerfield ("Ed") filed suit in California state court against his former employer, Strategic Lending Corporation ("Strategic"), as well as against the company's three alleged principals: Ali Weichler, Eric Swensen, and Leo Agustin. Ed alleged wage and hour law violations and assorted common law claims. Two years later, he voluntarily dismissed the action.

Then, in June 2009, he filed this action. He named the same defendants as before. But, this time his parents, Arthur and Rita Summerfield ("Arthur" and "Rita") joined as plaintiffs. As in the state suit, Ed alleged his employment-based claims (4th Cause of Action for Breach of Contract and 6th Cause of Action for Unpaid Wages, etc.). However, in Causes of Action Nos. 1, 2, 3, and 5 all three plaintiffs plead claims for negligence, breach of both fiduciary duty and the implied covenant of good faith and fair dealing, and - most significantly - a claim for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68. RICO provides

remedies for persons injured in their business or property on account of defendants engaging in a pattern of racketeering activity. It was unclear how Ed's employment claims implicated RICO. Arthur's and Rita's RICO allegations were premised upon the defendants (Weichler was named as the actor) importuning them to take out high-fees loans arranged through defendants by borrowing on the equity in property Arthur and Rita owned and to use the proceeds for investments that never panned out. Also, Weichler encouraged and enabled Arthur to engage in risky day trading.

Plaintiffs served the Summons and Complaint on Weichler and Swensen, who proceeded to file a Motion to Dismiss under FRCP 12(b)(1) and (6). They argued that the RICO allegations failed to state a claim for relief, and - if so - then the court had no subject matter jurisdiction over the state law claims. In its ruling on the motion, the court identified the particular pleading deficiencies the plaintiffs would have to overcome: Although the Complaint recited the elements of a RICO claim, it did not allege any supporting facts. (Dkt. 39 at 4.). Similarly, the alleged fraud underlying the RICO claims was not pled with particularity. (*Id.*). And, the Complaint only provided facts concerning Weichler's actions. (*Id.*). Plus, the Complaint on its face indicated that the statute of limitations had run on any RICO claim and the facts that were alleged seemed to belie the possibility of equitable tolling. (*Id.*).[1] Finally, the allegations that defendants *conspired* to violate RICO also failed to state a plausible claim for relief because they were just conclusions. (*Id.*). The court declined to exercise supplemental jurisdiction over the state law claims unless and until Plaintiffs adequately pled a federal claim. (*Id.*) The Court granted the motion with leave to amend.

Ignoring the fact that this Court had found that the Complaint, as presently plead, was not legally tenable, the plaintiffs then served it on defendant Agustin. Agustin never answered the Complaint. At plaintiffs' request, the Clerk entered Agustin's default in May 2010. (Dkt. 58.).

---

[1] The claims are based upon events occurring while Ed was employed by Strategic, and that employment ended in April 2005, more than 4 years before this action was filed.

After that, the claim against Agustin went dormant while the case proceeded against Weichler and Swensen.

Plaintiffs' First Amended Complaint fell victim to a technological glitch during electronic filing and came out as gibberish. Over defendants' objection, the court allowed plaintiffs a "do over."

The Second Amended Complaint also drew a Motion to Dismiss, and the court agreed with defendants. Since Ed had no present interest in his parents' trust, he could not meet the damage-to-"business or property" requirement for RICO. Arthur and Rita had not sufficiently alleged predicate acts of racketeering - either mail fraud or wire fraud. There were inflammatory allegations, but the actual fraudulent statements or omissions were not described. Again, the court declined to consider state law claims unless and until the RICO claim passed muster. The Court granted the motion with leave to amend.

The Third Amended Complaint dropped all state claims and alleged a single claim based upon a RICO violation. By now, Swensen had been dropped from the suit on account of his bankruptcy (Dkt. 82), so only Wiechler moved to dismiss. Once again, the court ruled, the allegations fell far short of what was required to successfully plead a RICO claim for relief. Although Rita may arguably have alleged a single instance of wire fraud, one instance did not measure up to the required "pattern" of racketeering activity. Since the Court felt that further leave to amend would be futile, this time the motion was granted without leave to amend. So, as of March 2011, Weichler was out of the case too. And, Strategic, long since defunct, had never been served. No one was left but Agustin, in default since May 2010.

Plaintiffs were represented by counsel up until the dismissal of the Third Amended Complaint. About five months after that, counsel for Plaintiffs moved to withdraw and the Court let him out. The Court allowed plaintiffs time to find new counsel and, after another five months, they

3

retained Ismael Perez. Perez made his first appearance at an order to show cause hearing for failure to prosecute in January 2012. He appeared at a case status conference a month later and told the Court that a motion for a prove-up hearing or a motion for default judgment was forthcoming. Ten months then passed without any action in the case. The Court held an order to show cause hearing on November 6, 2012 and set a final deadline of December 5, 2012 to file a motion. The day before the motion was due, Perez inveigled his three clients to sign "Substitution of Counsel" forms. Perez filed the substitutions and abandoned the case.[2]

Over the next couple months, Ed, Arthur and Rita, now operating on their own, submitted a host of variously titled documents aimed at convincing the Court that it should award them a default judgment against Agustin. The Court will ignore the piecemeal, haphazard method of plaintiffs' presentations and focus on whether there is any basis for granting a default judgment. The Court held a hearing on April 9, 2013. At that time, plaintiffs submitted a stack of additional documents and – in effect – asked the Court to figure it all out.

## LEGAL STANDARD

After entry of default, a court may, in its discretion, enter default judgment. *See* Fed. R. Civ. P. 55; *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding whether to enter default judgment, a court may consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). When the damages claimed are not readily ascertainable from the pleadings and the record,

---

[2] In violation of Local Rule 11-5, Perez did not seek the Court's permission to withdraw. The Court would not have given it if he had asked. The Court intends to report counsel's unprofessional actions to this Court's Standing Committee on Professional Conduct.

the court may conduct a hearing to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2).

**DISCUSSION**

The Eitel factors do not favor entry of default judgment in this case. First, the Complaint upon which default judgment is sought does not support a judgment against Agustin. The Court has already ruled that the RICO claims in the original Complaint (or, for that matter, in the later amended complaints) fail as a matter of law. "[I]f the complaint contains contradictory allegations or omits allegations essential to recovery, a default judgment cannot stand." Federal Civil Procedure Before Trial, Schwarzer, Tashima & Wagstaffe, 6-11, § 6:48 (2013); *see also Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388 (9th Cir. 1988) (reversing entry of default judgment on RICO claim because the complaint failed to properly allege a RICO claim based on mail and wire fraud). In *Alan Neuman Productions, Inc.*, the court found that "[t]he allegations of predicate acts in the complaint concerning those elements of RICO [were] entirely general; no specifics of time, place, or nature of the alleged communications are pleaded." *Alan Neuman Productions, Inc.*, 862 F.2d at 1392. There, the court reversed the entry of default judgment against defendant and held that "pleading requirements should be enforced strictly when default judgments are sought under RICO." *Id.* at 1393. Unless the Complaint's deficiencies could somehow be remedied now, it would be sufficient to stop the analysis right here.

So, would it be possible, as part of a prove-up hearing on a motion for default judgment, for plaintiffs to introduce evidence that would – rather than simply address damages – fill in the blanks on Agustin's liability? Under the law, probably not. The Court conducted research on this question and found two cases that mention this issue, but do not provide an answer. *See Nishamatsu Construction Co., Ltd. v. Houston Nat'l Bank*, 515 F 2d 1200, n. 5 (5th Cir.); *Alan Neuman*

5

*Productions, Inc. v. Albright*, 862 F.2d 1388 (9th Cir. 1988). Even if it were permissible, plaintiffs' presentation falls way short. As the Complaint fails to state RICO claims and includes no individual allegations about Agustin, Plaintiffs would have had to sufficiently allege RICO allegations, against Agustin, and support those allegations with competent evidence. Plaintiffs' submissions do not provide the clarity and specificity required for a RICO claim, and, nothing they submit is in admissible form. Plaintiffs offer a host of documents but do not sufficiently link the documents to the elements of a RICO claim. The submissions include no declarations from anyone and are otherwise not authenticated. In any event, even if the additional assertions about Agustin were accepted at face value, they do not measure up to a RICO claim or "prove" anything as to Agustin.

Finally, even if plaintiffs, hypothetically, had surmounted the barriers discussed above, they do not "prove" their damages. The request for damages is not submitted in evidentiary form, is inconsistent between different submissions, and none of the the papers submitted show how they arrived at their damages calculation. The various submissions list amounts for "Special[]" damages and "Emotional distress" damages, as well as costs and fees. None of the submissions, however, discuss how plaintiffs came up with these numbers. Though the motions include excerpts from bank statements and copies of deposit statements (which, in any event, involve numbers that do not add up to the requested amounts), plaintiffs do not describe how Agustin's conduct led to the loss of money in the specific amounts requested. Nor do plaintiffs provide any support whatsoever for their request for millions of dollars in emotional distress damages. In short, Plaintiffs have failed to connect the dots between Agustin's actions and the request for 4-5 million dollars in damages.

The Court is sympathetic to the plaintiffs' efforts, but, at this point, they are attempting to

6

1 salvage what is not salvageable. Accordingly, plaintiffs' motion for default judgment is DENIED.

2 The Clerk of Court shall close the file.

3 **IT IS SO ORDERED.**

4 DATED: June 21, 2013

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C09-02609 HRL Order will be electronically mailed to:**

Ismael D. Perez     easy@perezlawoffice.com

Jonathan Harold Miller     jhmillerlaw@gmail.com

Russell Alan Robinson     rarcases@yahoo.com, lawrs@ymail.com

Vincent J. Kilduff     kildufflaw@aol.com

**C09-02609 HRL Order will be mailed to:**

Rita Summerfield
Arthur Summerfield
Ed Summerfield
779 Steuben Drive
Sunnyvale, CA 940087

Leonardo Agustin
1905 Hamersley Ln
Lincoln,CA 95648

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**